## TERRELL et al. v. WHEELER-MOTTER MERC. CO.

No. 19574. Opinion Filed Oct. 28, 1930.

Rehearing Denied Jan. 6, 1931.

Melton & Melton, for plaintiffs in error.

Fred L. Hoyt, Howard Hopps, Roger L. Stephens, and W. F. McLaury, for defendant in error.

BENNETT, C. The parties to this appeal will be referred to as plaintiff and defendants, as they appeared in the trial court. This was an action by the defendant in error, as plaintiff, against the plaintiffs in error, as defendants, in the district court of Stephens county, Okla., to set aside a certain conveyance of real estate made January 18, 1926, by Elmer Terrell to his wife, Louanna Smith Terrell. The conveyance covered about 1,000 acres of land in Stephens county, Okla., upon a named consideration of $37,000. Plaintiff's petition alleged that Elmer Terrell and his brother, J. C. Terrell, were partners under the firm name of Terrell Brothers in the mercantile business at Walters, Okla.; that, from November 14, to January 18, 1926, Elmer Terrell was the owner of and held the legal title to said real estate, which was of the value of $65,-000, and that he represented to plaintiff that he was owner of said land and thereby secured goods on credit in excess of $21,000; that, on January 18, 1926, Elmer Terrell, for the purpose of defrauding creditors and especially plaintiff and without consideration, executed to his wife, who knew the facts, a warranty deed to said lands; that at said time grantor and his firm were heavily involved and promptly became bankrupt. Grantor and grantee knew this conveyance would prevent plaintiff from collecting its due; that the sums owing by said firm to plaintiff were represented by promissory notes, the balance thereon after allowing all credits aggregating over $21,000; that Elmer Terrell and his brother applied for, but were denied discharge in bankruptcy; that plaintiff has pending an action in the district court of Grady county to recover judgment against said partners, but if said transfer is not vacated, the amounts due are uncollectible, as debtors have no other property.

Louanna Smith Terrell's answer, in addition to a general denial, alleges that she had been for many years the owner of said lands; that she acquired same in 1914 from one T. E. Thompson by an exchange of other lands belonging to her; that in completing the exchange her husband acted for her and by mistake his name was inserted in the deed as grantee; that she did not know of the mistake until the year 1923; that she has always paid the taxes and received the rentals from said lands. After discovering the error, she demanded of her

husband a correction deed; that the conveyance assailed was made for the purpose only of vesting the title in the true owner. She prayed that her title be cleared from the cloud cast by plaintiff's demands. Elmer Terrell adopts, in so far as may be pertinent, the answer of his wife.

The cause was tried by the court, but certain interrogatories were submitted to a jury. The evidence was quite lengthy, and will be impracticable to quote at length therefrom. An agreed statement of facts was presented which, in substance, is as follows:

(1) That plaintiff is a corporation; that from 1914 to August 3, 1926, Elmer and J. C. Terrell were partners under the name of Terrell Brothers engaged in the general mercantile business buying large quantities of goods on credit; that plaintiff, a wholesale dealer, extended to said firm large credit; that during all of said time Elmer and Louanna Smith Terrell were husband and wife and living together.

(2) That plaintiff is owner and holder of two of the firm promissory notes aggregating, after deducting credits thereon, over $21000; that these notes are for goods sold on credit; that plaintiff has now an action pending on said notes in Grady county; that at and before the time said credits were extended plaintiff requested and Elmer Terrell furnished a financial statement in which said lands were scheduled as his separate property with the value thereof; that plaintiff examined same and also the records in the office of the county clerk of Stephens county, and verified said statement that title to said lands was vested in Elmer Terrell, and, upon the strength of said statement and record, plaintiff shipped to them large quantities of goods on credit, which they would not have done but for such financial statement and public records; that at no time did Louanna or anyone for her advise plaintiff of any claim or interest in said lands; that said financial statement, except for the item of real estate (this property), would have shown Terrell Brothers insolvent; that if Elmer Terrell did not own said lands, then he and his firm were insolvent at the time plaintiff extended the credit sued on herein and have remained insolvent ever since such time; that said notes were given for accounts due plaintiff from Terrell Brothers and Elmer Terrell for goods sold and delivered to them after said financial statements were furnished.

Uncontradicted evidence showed that Terrell Brothers owed plaintiff for merchandise more than $21,000; that a financial statement was made January 1, 1925, by Terrell Brothers to plaintiff in which the lands involved were scheduled as assets of Terrell Brothers—the same being owned by Elmer Terrell—and that the credit aforesaid was extended said firm by reason of this statement and the title record; that after Terrell Brothers were adjudged bankrupt all their property was disposed of, unless the lands involved are held to be such assets.

Defendants' evidence, in addition to certain conveyances and contracts, was to the effect that Louanna Smith, when about 20 years of age, married Elmer Terrell, who was without means, but was employed in a dry goods store. They moved to Chickasha in 1898. About that time Mrs. Terrell's father gave her $1,000. with which she purchased a grocery store. Later she engaged in the clothing business with J. C. Terrell, a brother of Elmer, as a partner, and this was operated for years; in fact, until the spring of 1918, under the firm name of Terrell Brothers. During all of said time the entire business of said firms was conducted under the management and direction of Elmer Terrell, but he seems to have had no direct financial interest in said enterprises. An invoice of the latter business showed at one time net assets of $20,000 to $30,000, and the business seems to have prospered; however, there is evidence to the contrary. The record does not disclose that Elmer Terrell received any substantial benefit from the operation of these enterprises owned by his wife and brother, although there is proof to the effect that he gave them close and successful attention for many years.

In the spring of 1918, Mrs. Terrell sold her interest in the clothing business, and soon thereafter Elmer and J. C. Terrell purchased a mercantile business at Hydro, which was operated for a short time and sold. They then purchased a clothing business in 1920 at Walters, Okla., which was operated under the name of Terrell Brothers, the partners therein being Elmer and J. C. Terrell.

Mrs. Terrell's father furnished her some additional money, with which she bought real estate. She had various transactions in real estate—buying, selling, exchanging, and improving the same for rental purposes—and finally she became fairly well off. She acquired valuable business lots in Chickasha which paid considerable rentals. She used these properties at times in securing loans for considerable amounts. She purchased a home in Chickasha, in which she lived at

the time of trial. She sold some of the business lots without improving the same, and others she improved.

After acquiring the land in question here by Mrs. Terrell in 1914, she paid little or no attention to the rents; they were paid to her husband and her evidence is to the effect that she thought they were accumulating in bank; that she intended to use them to improve her homestead at Chickasha. In 1923 she made inquiry of her husband and was informed that he had used all of the rents in his business. It is fairly deducible from the proof that the rentals were deposited to an account kept in the name of Elmer Terrell, who had the right to and did check on it; that his wife kept her checking account in a different bank and never checked on this rental account. At the time she was informed that the rentals had been used, she ascertained that the title to the farm stood in the name of her husband. The proof indicates that she claimed the farm was hers—the husband claimed that it was not, that it was in his name. She asked him in 1923 to convey the land to her, but he did not do it. She indicates that she consulted a lawyer as to the situation. She informed her husband in 1925, that if he did not make the deed to her she would sue or get a divorce.

Five special interrogatories were submitted to the jury:

"No. 1. Q. Were the buildings exchanged for the lands involved the separate property of Louanna Smith Terrell? A. Yes."

"No. 2. Q. Was the deed from Elmer Terrell to Mrs. L. S. Terrell, taken in good faith by her? A. Yes." (Found by 9 of the 12 jurors).

"No. 3. Q. Did the defendant, Mrs. L. S. Terrell, after discovering the record title of said land was in her husband, use reasonable diligence, under all circumstances, to secure a conveyance of said land from her husband, Elmer Terrell? A. Yes." (By 9 of the jurors).

"No. 4. Q. Was the deed from Elmer Terrell to Mrs. Louanna Smith Terrell, in this case, given with the intent to hinder and delay plaintiff as a creditor with knowledge of such intent on her part? A. Yes." (By 9 of the jurors).

"No. 5. Q. Did Mrs. L. S. Terrell have knowledge, or was she in possession of sufficient knowledge, that she should have known that her husband was using the record title to said land to obtain credit from plaintiff? A. Yes." (By all jurors). Signed R. E. Sharp, foreman.

Each of the parties moved for judgment upon the findings, but the court denied the motions and also declined to adopt the jury findings.

Defendants requested the court to make findings of fact in answer to the same inquiries submitted to the jury. The court made and set out in his judgment findings of fact. His answer to the first two inquiries was "Yes." The answer to the third injuiry was in the negative. As answer to an additional inquiry the court found that Mrs. Terrell discovered in the summer of 1923 that the title to her land was vested in her husband, and that she then made demand of her husband for a deed, but that she made no threat of legal action to compel conveyance until the summer of 1925. The court thereafter, on February 10, 1928, "irrespective of the answers given by the jury to the interrogatories submitted to them, makes his independent findings of fact generally upon the evidence in this case, and finds that upon the evidence, as a whole, the plaintiff is entitled to a judgment in its favor." The court thereupon adjudged that the said deed be set aside as against plaintiff; and that Louanna Terrell was estopped to assert any claim or title to the premises as against the rights of plaintiff, and appointed a receiver, from which judgment defendants appealed.

In the brief three propositions are relied upon by defendants:

First. The motion of Mrs. Terrell for judgment on the pleadings, evidence, and findings of fact should have been granted.

Seconl. Mrs. Terrell is not estopped from asserting her title to the land.

Third. The finding of the jury that Mrs. Terrell accepted title to this land in good faith is conclusive, etc.

We will discuss these propositions in the order named.

First. It is argued that this suit is brought under sections 6020 and 5270, C. O. S. 1921, and that thereunder a conveyance can be set aside only where the grantor in the deed is the rightful owner of the property, and 27 C. J. p. 419, sec. 22, and also 27 C. J. p. 433, sec. 52, are cited as authority for this contention. We think it clear that in the case at bar the latter section is sufficient answer to defendants' contention. This section is as follows:

"If a debtor holds the bare legal title to property for another and has no beneficial interest therein, it cannot, in the absence of elements of estoppel, be reached, and subjected to the payment of his debts, and,

therefore, a conveyance thereof by him to the equitable owner * * * is not fraudulent as against his creditors."

One cannot read the pleadings, the admitted facts, and undisputed evidence, and escape the conclusion that the chief matter of inquiry here is the issue of estoppel against Mrs. Terrell. It is too clear for argument that if the lands belonged to Mrs. Terrell, and her husband held simply the bare legal title, his creditors, nothing else appearing, would have no right to subject the land to the satisfaction of their debts. But if she permitted title to her land to remain in her husband for such length of time, under such circumstances and with knowledge on her part of such facts and circumstances as would make it inequitable for her to assert title against one who, in good faith and without negligence, had been misled to his injury, it is the plain duty of the court to fix the loss upon that one whose default has caused the loss. If the rule were as broad as defendants contend, any insolvent might be put in position to secure almost unlimited credit, but with no power in the creditor or the court to enforce payment, because it might be shown that the party who held title to property made the basis for credit was not the owner, but that he held the same for another. The business of the country could not easily survive such shock nor could respect for courts long survive such a holding.

It is next contended that this is a creditor's bill and that it cannot be maintained before a judgment at law is secured. Many cases are referred to as authority, but we cannot agree with this contention. See Adams v. Wallace, 94 Okla. 73, 220 Pac. 872; First Nat. Bank of Barnsdall v. Little, 122 Okla. 37, 250 Pac. 799.

It should be noted, too, in this connection that in the case at bar insolvency and bankruptcy of the defendant Elmer Terrell and his firm are admitted. The debt was substantially admitted. The correctness of the notes was not challenged, nor was there an offer of proof to the effect that they had been paid. With these admissions, what additional advantage would be had by the taking of a judgment which could not be satisfied and meanwhile allowing defendants an opportunity to incumber the property to the further embarrassment of plaintiff?

Sections 5271 and 6020, C. O. S. 1921, do not limit the rights therein given to a judgment creditor. Under the facts here we can conceive of no sound reason why the right should be postponed until a worthless judg-

ment be acquired. We find no error in the refusal of defendants' motion for judgment on the pleadings, evidence, and findings of fact.

Second. We have examined with care the evidence and findings pertinent to this issue. The court found that Mrs. Terrell did not use reasonable diligence to secure a conveyance of this land from her husband after she discovered that title was in his name, and further that she had actual knowledge as to the state of the title in the summer of 1923; and, in substance, that while she made a demand at that time, that was about the extent of her protest until the summer of 1925, when she threatened suit if the deed were not made. The court also found generally for plaintiff; that Mrs. Terrell was estopped from claiming these lands as against the plaintiff, who had extended credit upon the assumption that the same belonged to her husband.

We are not here faced with the average case or the case of the average woman dealing with her husband. This record is full of facts showing that Mrs. Terrell had more knowledge of business than the average woman. She entered into a sort of friendly rivalry with her husband to demonstrate her superiority as a moneymaker. She made her husband her agent to effectuate the transfer of title to these lands, which were of large value. Whether rightfully or not, the title remained as a result of this transfer in the name of the husband alone for twelve years. She entrusted to him the collection of the rentals aggregating $10,000 or $12,000. These were kept under his name in a bank and subject to his check. She kept her checking account in a different bank. She paid little attention to the rentals. She had been engaged for years in the mercantile business, buying on credit, and was fairly prosperous. She understood the necessity, purpose and effect of financial statements as basis for credit. She knew her husband was conducting in the later years a large business requiring considerable money and credit. She knew he carried large stocks of goods; she was in his place of business from time to time.

These enterprises which the husband managed for his wife prospered, but the record does not indicate that he profited proportionately, or, in fact, substantially, from his labors. The wife seems to have been the financial head of these establishments. It can be fairly gleaned from the record that Mrs. Terrell knew that her husband was

buying goods on short-time credit. She admits that she understood that the amount of credit extended to a merchant was dependent largely upon the amount of property he owned. When she found that $10,000 or $12,000 of rentals had been put into her husband's business, and that the title to the farm had been resting for twelve years in his name, she asked him simply to convey it to her. She consulted a lawyer; perhaps the exact time is not fixed. Any sound counselor would no doubt have informed her of the danger of permitting her property to stand in the name of her husband, especially since he was engaged in the mercantile business and using large credits. She waited two or three years, and, in fact, until shortly before his bankruptcy before taking serious action. We are not left to surmise or conjecture as to the result of this conduct. The stipulation shows that the plaintiff in good faith relied upon this land as that of her husband, and would not have extended credit but for that fact; that the husband did use the land as basis for credit, and, but for the land, the husband, his brother and the copartnership would have been insolvent. One of two people must suffer; either the one who has observed every prudent precaution—who has done nothing to bring about the loss—or the other who has so negligently conducted herself with respect to her property as to mislead another and cause him to change his position to his detriment. Equity should reward the vigilant and impose the burden upon that one whose act has brought about the injury.

Defendant relied largely upon Blake v. Meadows (Mo.) 30 L. R. A. (N. S.) 1, 123 S. W. 868. The facts in that case are so essentially at variance with the facts here that the authority is not controlling. Creditors there seeking to set aside a deed made to the wife claimed estoppel. Some of the creditors knew that the wife's money paid for the land. Certainly there could have been no estoppel as to them. Plaintiffs there, in extending credit, based their information as to the ownership of the land upon reports of commercial agencies, with respect to which the court in the opinion says:

"But this whole bundle of reports, * * * is so palpably vague and uncertain in relation to the ownership of the actual land in dispute, that we cannot see how faith and credit could be reasonably predicated on the information. Therefore we are inclined to the belief that the commercial reports should be rejected as a basis for credit, because of uncertainty and vagueness. With that holding, the mainstay of plaintiff's case is taken away."

That holding practically disposed of the case. The court also indicated in that case that none of the creditors received reliable information as to where the title in question was vested; that none of them examined the title records of the county wherein the lands lay. The court also emphasized the dependence and lack of experience of the wife, who had been engaged in no business at all, save that of caring for her own home. If it were not so splendid one might wonder why the court in the opinion proceeded to set up such a wonderful defense of the home, for the bowels of plaintiff's case had been ripped out by the holding and facts indicated above. None of the uncertainties pointed out in the Missouri case are present in the case at bar. The facts are fixed by stipulation and by uncontroverted proof.

The court in that case, however, indicated a willingness to go a long way to excuse a woman from demanding of her husband a reconveyance of her property taken in his name. This disposition of the court is frankly based on the desire for maintaining the peace and tranquillity of the home. That sentiment is admirable and certainly at one time would have encountered no protest. But under recent legislation women have been extended equal rights in the use, enjoyment, and disposition of their property. They may contract as freely as men and they may conduct their own affairs in their own way. Along with these rights and privileges there go certain correlative duties. One of these is that they may not use their property to the hurt of others. A great part of the property of this country is held by married women; for the most part they are asking no favors, but are conducting their affairs as individuals clothed with all the privileges and subject to all the responsibilities and duties of citizens under the law. It is highly desirable, of course, to preserve the peace and tranquillity of the home, of any home, of all homes. But we do not think that, in order to attain that end, it is necessary or permissible, or even wise, to allow the relationship of husband and wife to be used to wrong others, or to destroy credit, or to avoid obligations which ought, in a business sense, to be held sacred.

It is clear in the case at bar that the credit extended by plaintiff was twelve years after Mrs. Terrell had constructive, and two or three years after she had actual, knowledge that the title to her land, worth many thousands of dollars, was lodged in her

husband. She seems to have talked over with him business transactions, to have been about his place of business—as she says at one place—twice a day. If, as a matter of fact, he were, aside from the consideration of this land, insolvent in January, 1925, it is fair to assume that she knew something of it. We think there is sufficient in this record to indicate that she must have known something of the precarious financial condition of her husband at the time she accepted the deed assailed here, for she seemed to lose no time in selling a mineral lease on this property for $7,500, and within about a week after the conveyance she either mortgaged afresh or increased the mortgage on the land in a considerable sum and used the proceeds to pay off a mortgage on her homestead in Chickasha.

It is observable that Elmer Terrell, husband of Louanna and a party to this suit, was not called by defendants to testify, and no reason for the failure to call him is indicated. He must have known the facts. Toone v. Walker, 115 Okla. 289, 243 Pac. 147. These details may be but straws in the current, but sometimes they have a real meaning.

If, as a matter of fact, Elmer Terrell were making fair headway in his mercantile business, it might be conjectured that his wife was willing to help him out as best she could, allowing a part of the property to remain in his name. It was probably necessary for him to have property as a basis for credit in the business which he was conducting to her knowledge. We think this proof indicates a fair-weather partnership or arrangement between the husband and wife. So long as he was making headway and there was no cloud in the sky, the fact that he held the title to her land created no consternation, but when foul financial weather threatened, the need for getting all the papers straight and the making of protective dispositions of property with haste became very urgent.

We have gone over this record—some of it many times—and also the briefs of the respective parties. There is no serious dispute here about the facts. Most of them are settled by stipulation or by uncontroverted proof. There was at the trial but one outstanding determinative issue, to wit, Was Mrs. Terrell estopped by her conduct to assert title to this land as against plaintiff? The court has found upon request and dictated into the record facts sufficient upon which to predicate his conclusion of law and the judgment entered. This is sufficient. Etchen v. The Texas Co., 82 Okla. 62, 199 Pac. 212. And upon examination of such is-

sues of fact and conclusions of law and the judgment thereon entered, we are convinced that such findings are properly supported by the record and that the judgment is not against the clear weight thereof. Black, Sivalls & Bryson, Inc., v. Farrell, 131 Okla. 249, 268 Pac. 276. Authorities upholding the doctrine announced herein may be found in 2 Pomeroy's Eq. (4th Ed.) sec. 804; Walker Valley Oil & Gas Co. v. Parks & Palmer, 128 Okla. 286, 262 Pac. 672; Goldberg v. Parker, 87 Conn. 99, 87 Atl. 555; Lawrence v. Guaranty Inv. Co., 51 Kan. 222, 32 Pac. 816; McCormick Harvesting Machine Co. v. Perkins, 135 Iowa, 64, 110 N. W. 15; Iseminger v. Criswell (Iowa) 67 N. W. 289. See, also, Porter v. Goble (Iowa) 55 N. W. 530; George Taylor Comm. Co. v. Bell (Ark.) 34 S. W. 80; Minnich v. Schaffer (Ind.) 34 N. E. 987; Hopkins v. Joyce, 78 Wis. 443, 47 N. W. 722; Hawk v. Van Ingen (Ill.) 63 N. E. 705; Chapman v. Ferrell, Sheriff, 96 Kan. 659, 153 Pac. 511; 27 C. J. 564, sec. 274; Wimberly v. Winstock, 46 Okla. 645, 149 Pac. 238; Hinman v. Silcox (Md.) 46 Atl. 1017.

Third. As we have indicated above, this was an equity action. The findings of the jury were not conclusive either upon the trial court or upon this court.

For the reasons given, the judgment is affirmed.

TEEHEE, HALL, LEACH, and REID, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 2 R. C. L. p. 204; R. C. L. Perm. Supp. p. 379; R. C. L. Continuing Perm. Supp. p. 43. (4) anno. 30 L. R. A. (N. S.) 2; 12 R. C. L. p. 601.