## WILSON et al. v. OLSEN.

No. 21742.   Jan. 30, 1934.

Rehearing Denied March 27, 1934.

Reuben M. Roddie and J. O. Whiteside, for plaintiffs in error.

Allen & Jarman and Solus S. Brooks, for defendant in error.

WELCH, J. This action was commenced in the district court of Oklahoma county by Addie Baker to quiet her title to an undivided one-half interest in the mineral rights on 80 acres of land in Oklahoma county. The rights of the plaintiff were admitted

by all. The dispute was between defendants in the trial court, and this appeal is taken by R. H. Wilson, Dora May Humphreys, G. J. Humphreys, and Permelia B. Blakeney, nee Wynne, who were defendants in the trial court, and who appear herein as plaintiffs in error. The defendant in error, R. Olsen, was also a defendant in the trial court. Complaint is here made of the judgment of the trial court to the effect that the defendant R. Olsen is the owner of a one-third interest in the oil, gas, and other minerals and minerals rights in and to said land.

One Fred E. Latch, on November 15, 1922, was the owner of the land in controversy in fee simple, and on said date he executed a warranty deed to Permelia B. Blakeney, nee Wynne, conveying the land. Subsequently Permelia B. Blakeney, nee Wynne, conveyed the land to Dora May Humphreys and G. J. Humphreys, and these last parties in turn conveyed the same to R. H. Wilson. It is contended that in the conveyance from Latch to Permelia B. Blakeney, nee Wynne, the grantor retained an undivided one-third interest in and to all of the oil and gas rights in and to said land. This deed was of record at the time of the execution of subsequent conveyances. The said Latch subsequently conveyed to the defendant Olsen a one-third undivided interest in and to the oil and gas and other mineral and mineral rights in and to the land, and it is under this conveyance that Olsen claims.

The determining factor in the cause is the deed from Fred E. Latch to Permelia B. Blakeney, nee Wynne. The provisions of the deed necessary for a consideration are as follows:

"In consideration of the sum of $1 and for the additional consideration of an undivided one-third (1/3) interest in and to all of the royalty of the gas, oil and mineral and the rights thereto, in or under the premises hereinafter described, the receipt of which is hereby acknowledged, do by these presents, grant, bargain, sell and convey the following described real property and premises situated in Oklahoma county, state of Oklahoma, to wit:

"The southeast quarter (S. E. ¼) and the east half (E. ½) of the southwest quarter (S. W. ¼) of section four (4), township twelve (12) north, of range two (2) west, containing two hundred forty (240) acres, more or less

"—together with all the improvements thereon and appurtenances thereunto belonging, and warrant the title to the same.

"To have and to hold said described premises unto the said party of the second part,

her heirs and assigns forever, free, clear and discharged of and from all former grants, charges, taxes, judgments, mortgages and other liens, and incumbrances of whatsoever nature,

"Except subject to a first mortgage of $3,500 and accrued interest thereon, to Kee R. McKee, from February 24, 1922."

Plaintiffs in error contend this deed contains no reservation of any mineral rights whatever; that the language in the first paragraph of the deed does not amount to a reservation but is a simple recitation of consideration, amounting, at most, only to an agreement for the grantee to reconvey to the grantor the specific interest mentioned, which as an executory contract would have been enforceable prior to the running of the statute of limitations and before any rights of innocent purchasers intervened. We are thus called upon to determine the meaning and effect of the language contained in the deed. It is admitted that the Wilsons are the owners of the fee-simple title, and that at the time they purchased the land they had no knowledge of any reservation of mineral rights, save and except such notice as may have been conveyed by the recitations in the deed from Latch to Wynne. Plaintiffs in error cite a number of authorities announcing the general propositions of law relating to estates upon condition, and to clauses in a deed which amount to executory contracts, some of which are as follows: 8 R. C. L. 1104, sec. 163; Taylor v Sutton, 15 Ga. 103, 60 Am. Dec. 682; Woodruff v. Woodruff, 1 L. R. A. 380; Raley and Another v. County of Umatilla (Ore.) 13 P. 890; Reynolds v. Reynolds (Ala.) 95 So. 180; 18 C. J. 333; Edwards v. Brusha, 18 Okla. 235, 90 P. 727; Fraley, Adm'r, v. Wilkinson, 79 Okla. 21, 191 P. 156, together with other authorities to the same general effect. We deem such authorities inapplicable to the instant case for the reason that the language of the deed here considered is not capable of being construed as a covenant between the parties to do or perform something subsequent to the making and delivering of the deed. There is nothing therein contained from which it might be inferred that the grantee was to reconvey an interest in the oil, gas, and mineral rights to the grantor, but, on the contrary, after a recitation of the consideration, which was described as $1, and the additional consideration of an undivided one-third interest in and to all of the royalty of the gas, oil, and mineral and the rights thereto, in and under the terms hereinafter described, there appears the clause, "The receipt of which is hereby acknowledged." This negatives the idea that either of the

parties expected anything further to be done.

The general rule is supported by some of the foregoing authorities that the granting clause in a deed determines the interest conveyed, and that unless there is repugnancy, obscurity, or ambiguity in that clause, it prevails over introductory statements or recitals, and over the habendum, if they are contrary to it. This technical or strict rule of construction, however, has been relaxed, as shown by the trend of modern decisions, and this is particularly true where the entire instrument taken as a whole indicates that the parties intended otherwise. Indeed, this court appears to be committed to the rule of determining the intention of the parties from an examination of the entire instrument. In Smart v. Bassler, 101 Okla 39, 223 P. 352, this court held:

"In earlier decisions much importance was attached to the language used in the different clauses of a deed, but the modern tendency is to ignore the technical distinctions between the various clauses, and to ascertain, if possible, the intention of the grantor from the entire instrument without undue preference to any part."

The Supreme Court of Kentucky, in Bain v. Tye, 169 S. W. 843, said:

"It is an elementary rule in the interpretation of deeds that the intention of the parties should be effectuated, and in doing this, a liberal construction is given to deeds inartificially and untechnically drawn. The intent must primarily be gathered from a fair consideration of the entire instrument, and the language employed therein should be considered with the terms of the deed, including its scope and subject-matter."

For a further discussion of the rule, see 18 C. J. 252 and 256, and at p. 258 thereof we find the following expression:

"Some meaning should be given to every clause, word and expression, if it can reasonably be done, and is not inconsistent with the general intent of the whole instrument, so that the deed may operate * * * according to the intention of the parties."

We think the rule announced in Smart v. Bassler, and Bain v. Tye, supra, and Corpus Juris, as above quoted, is applicable to this case.

It is true that sufficient care was not used in choosing language to fully and clearly describe the exact interest intended by the parties to be reserved to the grantor. The deed is not artistically drawn and does not comply with all technical rules of conveyancing. But it clearly appears from the deed that the parties intended that the grantor should retain some interest in the oil, gas, and minerals, and the amount of the interest is referred to as one-third.

It is alleged and proved upon the trial of the case that it was the specific intention of the parties to the deed that the grantor retain one-third undivided interest in and to all oil, gas, and mineral rights of the property therein conveyed, and that if the language used in the deed did not recite that reservation, it was due to the mutual mistake of the parties thereto. The parties had entered into a written contract, duly acknowledged, containing that clear and specific provision. This contract was entered into the day before the delivery of the deed. The deed was drawn and was explained to all of the parties at the time of the delivery as being such an instrument as carried out the terms of the contract, and that it reserved unto the grantor a one-third interest in and to all the oil, gas, and other minerals in and to the land. The evidence on that point is uncontradicted, and is full, clear, unequivocal, and convincing, and in our opinion the record here admits of no doubt of the intention of the parties. Davis v. Keeche Oil & Gas Co., 89 Okla. 226, 214 P. 711; Home Insurance Co. v. Akers, 96 Okla. 232, 221 P. 493; Teachers Conservative Ass'n v. England, 115 Okla. 298, 243 P. 137; Muskogee Refining Co. v. Waters-Pierce Oil Co., 89 Okla. 279, 215 P. 766.

The defendant Olsen contends that the wording of the deed is a sufficient reservation of a one-third interest in and to all of the oil, gas, and mineral rights in and to said land, or that if the words used therein do not amount to such a reservation, it was due to an omission or mistake of the scrivener, and was a mutual mistake of the parties to the instrument in that the instrument did not reflect the actual intention and agreement of the parties. The trial court permitted a showing to be made by evidence other than the deed itself as to the actual intent of the parties, obviously upon the theory that the deed was imperfectly drawn and the language therein contained was ambiguous. The phrase, "an undivided one-third interest in and to all of the royalty of the gas, oil and mineral and the rights thereto," may be said to be ambiguous to the point that it requires additional information from which to determine with absolute certainty its exact meaning. Had the words, "and the rights thereto," been omitted, it might be logically concluded that the reservation referred to

"royalty" taken in a strict sense, and as defined by Webster's New International Dictionary as, "A share of the product or profit reserved by the owner for permitting another to use the property," and as defined in the various judicial pronouncements cited by plaintiff in error. The addition, however, of the words, "and the rights thereto," must either be construed as a mere repetition, or as referring to gas, oil, and mineral rights. And the suggestion that it referred to gas, oil, and mineral rights is the more pronounced by reason of the fact that at the time of the execution of the deed there was no oil and gas lease on the property, and at that time, at least, in the strict sense, there were no royalty rights to reserve or deal with in any manner. We think in such case the applicable rule of law is announced in 23 R. C. L. page 327, par. 20, and cited by plaintiff in error as follows:

"When no question of fraud, bad faith or inequitable conduct is involved and the right to reform an instrument is based solely on a mistake, it is necessary that the mistake be mutual, and that both parties understood the contract as the complaint or petition alleges it ought to have been, and as in fact it was, except for the mistake; and this is so whether the mistake is one of fact or one of law, or one of law and fact mixed. A mutual mistake is one which is reciprocal and common to both parties, where each alike labors under the same misconception in respect to the terms of the written instrument, and sometimes of the agreement itself."

The evidence here is clear and uncontradicted that the parties to the original instrument specifically intended and contracted that the grantor should have and retain a one-third undivided interest in and to all of the mineral rights to the land.

In Rogers v. Kinney, 122 Okla. 73, 250 P. 890, this court held:

"A court of equity will look at the real object of a deed and the intention of the parties, and will compel the fulfillment of both, and, if possible, the intention of the grantor will be gathered from the whole instrument. If the intention of the parties to the deed is plain, parol evidence is not admissible to prove an intention different from the terms of the deed, but where a deed possesses an element of uncertainty, parol evidence, the admission of the parties, and other extraneous circumstances may be proved to ascertain its true meaning."

The opinion in the last-quoted case contains many authorities applicable to the questions we have discussed in this case.

It is further contended that, inasmuch as R. H. Wilson, the present owner of the fee, purchased the land from the grantee in the deed, and without any actual notice of the contract of sale and purchase entered into between the grantor and grantee, he is an innocent purchaser, and the rules of law above announced would not apply to him.

This position would be correct if the attempted reservation had been made or mentioned in the contract of sale alone, and if the deed itself contained no reservation whatever, or if the attempted reservation were stated in the deed in words that were so vague and indefinite as to be insufficient to give any constructive notice, or to put a prospective purchaser upon inquiry. The authorities cited upon this point announced the correct rule that a purchaser for value without notice, either actual or constructive, will not be affected by latent equities, liens or claims. However, in this case, the language used in the deed was sufficient to reserve the one-third of the oil, gas, and mineral rights, as intended or beyond question the language used was sufficient to put any prospective purchaser upon inquiry as to whether the reservation was a reservation of such one-third.

Having so concluded, we are of the opinion that the applicable rule is announced in Creek Land & Improvement Co. v. Davis, 28 Okla. 579, 115 P. 468. Therein this court said:

"A purchaser of lands takes them with constructive notice of whatever appears in the conveyance which constitute his chain of title; and, if sufficient appears therein to put a prudent man on inquiry, which would, if prosecuted with ordinary diligence, lead to actual notice of a right or title in conflict with that he is about to purchase, and he fails to make such inquiry, the law will charge him with the actual notice he would have received if he had made it."

This well-known rule has been consistently followed by this court in many cases where the language used in conveyances was such as to lead a man of ordinary prudence to suspect that there were collateral agreements associated with the conveyances, or where the language was not sufficiently concise and specific to clearly and without doubt express the intention of the parties to the instrument. Reference to our foregoing discussions of the facts in this case will show that we consider the language used in the deed herein sufficient to reserve the intended one-third interest, or of such nature as to call for inquiry by any one about to take title; and the record herein contains no evidence that any such inquiry was made. It is reasonable to conclude that

had Wilson made only the slightest inquiry, he would have possessed himself of information that the parties to the deed intended that the grantor was to retain a one-third interest in and to all of the oil, gas, and mineral rights on the land.

Further contention is made that the defendant Olsen, as the assignee of Latch, can have no right herein to have the deed reformed as against Wilson, citing Gypsy Oil Co. v. Schonwald, 107 Okla. 253, 231 P. 864, and other similar cases. An examination of the Gypsy Oil Co. Case, supra, reveals that the assignee of one of the parties to an oil and gas lease took his conveyance with full knowledge of a clear and concise provision in the oil and gas lease susceptible on its face to only one interpretation. So far as the record in that case is concerned, the assignee took his assignment at the time fully acquiescing in the provision clearly contained in the oil and gas lease. There is nothing in that case from which it might be said that the assignee did not obtain by his assignment all that he expected to obtain from his assignor. In the instant case it is apparent from the record that Olsen, the assignee, purchased from Latch what they both conceived to be a one-third interest in and to the oil, gas, and mineral rights to the land. It is not here made to appear that Olsen is obtaining any rights by a reformation of the deed in question greater than that which Latch thought he was selling and which Olsen thought he was purchasing. We see no reason for the application of the rules announced in the cases cited by plaintiff in error on that point.

Finding no error in the judgment of the trial court, the same is therefore affirmed.

RILEY, C. J., CULLISON, V. C. J., and ANDREWS, OSBORN, and BUSBY, JJ., concur.