TRUMBLA et al. v. STATE ex rel. COMMISSIONERS OF THE LAND OFFICE.

No. 30224. Feb. 3, 1942.

Rehearing Denied May 5, 1942.

Application for Leave to File Second Petition for Rehearing Denied June 30, 1942.

*126 P. 2d. 1015.*

120

H. A. Johnson, of Perry, for plaintiffs in error.

Orlando F. Sweet and Campbell Hippen, both of Oklahoma City, for defendant in error.

DAVISON, J. This is an action to foreclose a real estate mortgage. It was instituted in the district court of Noble county on October 15, 1937, and successfully prosecuted to judgment and decree of foreclosure on July 27, 1940, by the State of Oklahoma ex rel. Commissioners of the Land Office, as plaintiff, against Jesse W. Trumbla and others, as defendants.

The defendants have appealed, thus reversing the order of appearance in this court. However, we shall continue to refer to them by their trial court designation.

The mortgage foreclosed in this action was executed in July of 1927 by Jane Trumbla, a widow, to the Commissioners of the Land Office to secure a principal indebtedness evidenced by promissory notes of $1,500, together with accruing interest and, in the event of foreclosure, attorneys' fees. Jane Trumbla died in August of 1936, prior to the institution of this action. The present owners of the property are defendants herein.

The principal question submitted for decision in the trial court and presented for review herein is whether Jane Trumbla at the time she executed the mortgage owned a fee-simple title, or merely a life estate in the property covered by the mortgage.

This depends upon the effect of the deed by which she acquired the mortgaged premises from her husband in November of 1914, previous to the execution of the mortgage.

The husband, grantor in the deed, died prior to the execution of the mortgage. The deed, with signature and acknowledgment omitted, reads:

"This indenture, made this the 2nd day of November, 1914, between John Trumbla of Noble County, in the State of Oklahoma, of the First Part, and Jane Trumbla of the Second Part:

"Witnesseth; That the said part.. of the first part in consideration of love and affection and one dollar, the receipt of which is hereby acknowledged, do by these presents, grant, bargain, sell and convey unto the said party of the

second part, her heirs and assigns, all the following described real estate situated in County of Noble, State of Oklahoma, to-wit:

"Northwest Quarter of Section Two (2) Township Twenty-one (21) Range One (1) West. Also Lot eight (8) Block Forty-five Townsite of North and West Perry.

"This deed is made to Jane Trumbla, my wife, to have and to hold during her life time and at her death to go to my heirs, share and share alike.

"To have and to hold the same, together with all land singular the tenements, hereditaments, and appurtenances, thereunto belonging or in any wise appertaining, forever.

"And said John Trumbla for his heirs, executors or administrators, does hereby covenant, promise and agree to and with said party of the second part, that at the delivery of these presents he is lawfully seized in his own right of an absolute and indefeasible estate of inheritance in fee simple, of and in and singular the above granted and described premises with the appurtenances, that the same are free, clear, discharged, and unincumbered of and from all former and other grants, titles, charges, estates, judgments, taxes, assessments, incumbrances, of what nature or kind, soever. Except Mortgage of Four Hundred Dollars, against the Northwest Quarter of Section Two in Township Twenty-one, N. of Range 1, West, and that he will warrant and forever defend the same unto said party of the second part, her heirs and assigns, against said party of the first part, his heirs and assigns and all and every person whomsoever, lawfully claiming or to claim the same.

"In Witness Whereof, The said Party of the First Part has hereunto set his hand the day and year first above written."

The troublesome portion of the foregoing instrument is the inserted language which immediately precedes the habendum clause.

It will be noticed that (with the portion last above referred to eliminated) the granting and habendum clauses, as well as other portions of the deed, are worded in such a manner as to designate the estate conveyed to Jane Trumbla as one in fee simple.

The present owners of the premises, as defendants, attach controlling importance to the inserted language and say that it operated to limit the interest conveyed to Mrs. Trumbla to a life estate, thus limiting the interest in the premises which she could effectively mortgage.

If this position is sound, it is immaterial whether the fee in the premises subject to the life estate (by reason of the language used) reverted to the grantor, and passed to his heirs by inheritance or vested in them by conveyance as a remainder — an interesting question but not appropriate for discussion herein (see annotation 125 A.L. R. 548).

Counsel for the plaintiff take the position that the deed operated to convey a fee-simple estate to Jane Trumbla. They say that the clause inserted is indefinite, ambiguous, and uncertain in meaning, and wholly insufficient to restrict or limit the estate in fee simple purported to be conveyed by the language preceding the description and supported by the habendum clause and other portions of the deed. They urge that, even if it is susceptible of the construction relied upon by the defendants, they have by their own acts demonstrated that they interpreted the deed as vesting a fee-simple title in Jane Trumbla, and that such construction is competent to establish the true intent and purpose of the deed in view of its ambiguity.

The trial court decided that the meaning and effect of the deed was uncertain as to the estate conveyed, and that evidence could therefore be introduced to show the construction thereof by the parties to the instrument. Upon consideration of the proof offered on this point, it was decided that the purpose and effect of the instrument was to vest in Jane Trumbla a fee-simple estate.

At the conclusion of the evidence the

trial court, pursuant to request and in compliance with section 374, O. S. 1931, 12 Okla. St. Ann. § 611, orally dictated to the court reporter his separate conclusions of law and fact. These were transcribed. Although the method employed is herein questioned, it is sufficient. Kilgore v. Stephens, 159 Okla. 119, 14 P. 2d 690; Smith v. Gibson, 150 Okla. 101, 300 P. 797; Terrell v. Wheeler-Motter Mercantile Co., 147 Okla. 77, 294 P. 644; Black, Sivalls & Bryson, Inc., v. Farrell, 131 Okla. 249, 268 P. 276; Etchen v. Texas Company, 82 Okla. 62, 199 P. 212.

The basis of the trial court's decision, as well as the proven facts taken into consideration in determining the construction placed on the instrument by the parties claiming under it, are accurately stated in the conclusions of the trial court, from which we quote:

"(2) The provisions present in the deed which give it the character of a warranty deed conveying fee-simple title outweigh any therein which might give it the character of a life estate. However, the quoted clause refers to the deed rather than to the title to the real estate and contains no words of conveyance of a remainderman estate to grantor's heirs. Even in the absence of any construction placed on it afterwards by the parties interested, the clause in question might be construed as something akin to a precatory trust as it is sometimes found in wills, or an expression of the grantor's desire that the grantee by will or deed convey it to his heirs; and this interpretation of the deed was afterwards placed on it by the grantee, Jane Trumbla, and her son, Joe Trumbla, in the following ways: (a) Jane Trumbla, up to the time of deeding it to the heirs of herself and John Trumbla, elected to hold a fee-simple title and this was actively approved by her son, Joe Trumbla; her daughter, Mrs. Northrop, and acquiesced in by the silence of all others. (b) Jane Trumbla executed several mortgages on the land as though she had a fee-simple title, the last one being the plaintiff's mortgage. (c) On August 3d, 1936, Jane Trumbla executed to all of said heirs a general warranty deed to said land wherein she represented and warranted that she was the fee-simple owner, and reserved a life estate to herself and the heirs accepted this deed. This act faithfully carried out the desire of the father and husband, John Trumbla, that these heirs become the owners of the land at the time of her death. (d) It does not appear from the evidence that Jane Trumbla, or Joe Trumbla, or Mrs. Northrop or anyone else interested in said land, by deed, mortgage or inheritance, ever entertained any idea that Jane Trumbla's title was anything but one in fee simple, until after this suit was filed.

"(3) Therefore, the court concludes that the title conveyed to Jane Trumbla by John Trumbla was one in fee simple and that at the time plaintiff's mortgage was executed by Jane Trumbla said Jane Trumbla held the fee-simple title, and that the plaintiff's mortgage is valid and that the plaintiff is entitled to have the same foreclosed as prayed for in its petition.

"(4) In construing the contract of the parties, in order to arrive at their intention the court has endeavored to determine how the parties themselves treated the title. Because, as once said by Lord Chancellor Sudgeon, 'Tell me what you have done under a deed and I will tell you what that deed means.' And this court feels justified in using that method in arriving at its conclusions in the case at bar. Furthermore, the Supreme Court of the United States has said: 'Generally speaking, the practical interpretation of a contract by the parties to it for an considerable period of time before it comes to be the subject of controversy, is deemed of great, if not controlling influence.'"

As noted by the trial court, the inserted language, in its literal acceptation, constituted the expression of a desire that upon the death of the grantor the land pass or be transferred to his heirs. No words of present grant or conveyance were used in connection with the heirs and no definite intent to vest an estate in remainder by delivery of the instrument was expressed.

Of course the instrument, being a deed and not executed in accordance with the statute of wills, could not operate as a will. Loosen v. Stangl, 163 Okla. 231, 22 P. 2d 364; Snodgrass v.

Snodgrass, 107 Okla. 140, 231 P. 237. As the trial court pointed out, the parties to this instrument, prior to the institution of this action, treated the clause as ineffective, but subsequently carried out the expressed desire of the grantor by appropriate conveyances.

In this state we have departed from the older rule that the granting clause of a deed is of paramount importance in ascertaining its purpose and effect. Smart v. Bassler, 101 Okla. 39, 223 P. 352; Baker v. Campbell-Ratcliff Land Co., 64 Okla. 249, 167 P. 468. While that part of a deed is still important (Jennings v. Amerada Petroleum Corporation, 179 Okla. 561, 66 P. 2d 1069), we adhere to the view that the purpose and effect of the instrument should be ascertained from its provisions reviewed as a whole without undue reference to technical distinctions between its various clauses. Wilson v. Olsen, 167 Okla. 527, 30 P. 2d 710.

We also approve and apply the generally prevailing rule that when the language of a deed is uncertain in meaning and susceptible of more than one construction, "parol evidence, the admission of the parties, and other extraneous circumstances may be proved to ascertain its true meaning." Wilson v. Olsen, supra.

Thus, in case of doubt, evidence showing the construction placed on the deed by the parties to the instrument is an important element in determining its purpose and effect. On this point it is said in 16 Am. Jur. 536, par. 174:

"A deed which is ambiguous or uncertain may be definite and certain by the practical construction of the parties to it while in interest. The construction put on such a deed by the parties is an indication of their intention. Therefore, where the construction of a deed is doubtful, great weight is to be given to the construction put upon it by the parties, especially in the case of doubtful questions which must be presumed to be within their knowledge, and such practical interpretation of the parties themselves by their acts under a deed is entitled to great, if not controlling, influence."

Since the defendants suggest in their brief that proof of the conduct of the parties should be limited to the time of the delivery of the deed, it is proper to note at this point that the subsequent acts of the parties under the deed are, as held by the trial court, and as stated in the above-quoted rule, important and appropriate for consideration (note, also, Thompson on Real Property (Perm. Ed.) para. 3279, p. 453, vol. 6).

In Lowery v. Westheimer, 58 Okla. 560, 160 P. 496, we said in paragraph 3 of the syllabus:

"Where the meaning of the terms used in a deed is not clear, *the subsequent acts* of the parties showing the construction they have put upon the same themselves before the land became a subject of controversy are to be looked to by the court." (Emphasis ours.)

In promulgating the above rule we cited in the body of the opinion rules applying generally to contracts of a less formal nature as appropriate in construing deeds.

Upon consideration of the foregoing authorities, we conclude that proof of the subsequent acts of the parties under the deed were admissible and proper for the purpose of determining its effect. Our review of the proof convinces us of its sufficiency to establish that the parties themselves regarded the deed as effectively vesting in Jane Trumbla a fee-simple estate.

The next question is: Was the language used susceptible of the construction which the parties placed upon it? The purpose of considering extrinsic facts is to eliminate uncertainty in the meaning of the language used rather than to rewrite the contract for the parties or to force the language beyond its possible meaning.

No case from this court precisely in point has been called to our attention. However, counsel for the plaintiff have called our attention to decisions from other states demonstrating that the courts of those states have construed language of similar import with the

questioned insertion. Those courts have, after considering in conjunction therewith the other and regular provisions of the deeds, placed the same construction on and given the same effect to the language used as did the parties to this controversy acting under the deed.

We deem these authorities of controlling importance in this case, not for the purpose of attributing a definite meaning or lack of meaning to the language used, but for the purpose of demonstrating that the language of the deed was susceptible of the construction placed thereon by the parties.

As we said when confronted with a somewhat analogous situation in Maryland Casualty Co. v. Whitt, 167 Okla. 261, 29 P. 2d 65, at 67:

"Without deciding that the interpretation placed upon this contract by the Kansas court was the only interpretation of which the contract was susceptible, it is quite obvious that when the Supreme Court of a sister state has so interpreted the identical provisions which appear in the contract in the case at bar, it would be presumptuous indeed for us to say that the parties to the contract could not have so interpreted the contract at the time of its execution. . . ."

We now examine decisions of appellate tribunals in Colorado, California, and Alabama.

In the case Millage v. Churchill, 69 Colo. 457, 195 P. 107, the Supreme Court of Colorado, having before it a deed quite similar to the one now before us, held that the same could not be inpreted to convey anything other than a fee-simple estate, and that parol evidence was not admissible to show a lesser interest conveyed. The inserted clause in the deed in the cited case read:

"This deed is in fee simple during the life of the said second party, and at the death of the said second party, the said Ida Millage, the title to the land above described shall descend to and vest in the legal heirs of the said first party, the said Jacob Millage."

The court in disposing of the point said:

" . . . Moreover, the clause does not purport to be a statement of intention, but rather of opinion as to the effect of the conveyance, which opinion being repugnant to the well-settled meaning of the specific terms of the grant, and conflicting in its own terms, should not be recognized as in any way affecting the grant actually made. Had the limitation clause been clear and specific, indicating an indubitable intent and purpose to grant a life estate only, as was the case with the deed involved in Johnson v. Barden, supra, then the master rule of intent might well be applied. Not, however, we think, upon the facts of this case.

"It was not error on the part of the trial court, under the circumstances, to exclude the testimony proffered as to prior declarations of the grantor, since it is apparent that nothing thus tendered could have made clear what the actual intention and purpose of the limitation was, since it is repugnant in its terms and hopelessly conflicting, and therefore incapable of being made plain and harmonious by parol testimony: . . ."

While the court in the cited case attached more weight to the granting and habendum clauses than we might attribute if we were called upon to construe the naked instrument, its conclusion demonstrates that the parties herein were, in treating and construing the instrument as they did, within the scope of the meaning of the language used.

A somewhat similar problem confronted the Alabama Supreme Court in Long v. Holden, 216 Ala. 81, 112 So. 444, 52 A.L.R. 536. The nature and disposition of the problem is indicated by the first paragraph of the headnotes:

"The insertion by the grantee, in a deed of bargain and sale in which the grant, the habendum, and the covenants are to the grantee, his heirs, and assigns, of a clause immediately preceding the habendum, 'It is understood that at my death this land is to go to my daughter,' naming her, does not have the effect of preventing a fee-simple estate vesting in the grantee."

In the Alabama case the California

court's solution of a similar problem is mentioned and quoted from. We quote and requote:

"The only reported case, apparently, which is substantially like this, is that of McGarrigle v. Roman Catholic Orphan Asylum, 145 Cal. 694, 1 L.R.A. (N. S.) 315, 104 Am. St. Rep. 84, 79 P. 447. There, however, the property was conveyed to McGarrigle *expressly 'during his lifetime.'* Immediately following the description was this clause:

" 'It is the purpose of the party of the first part by this deed, that after the death of the said party of the second part, the said described lands *shall become and be* the property of the Roman Catholic Girls' Orphan Asylum of San Francisco.' (Italics supplied.)

"The court said:

" 'It is upon the italicized portion of this conveyance that appellant relies, but we are of opinion that the trial court correctly construed this clause as containing no operative words of grant, and as failing to convey any present interest in the property. *It will be noted that the appellant is nowhere mentioned as a grantee in the deed, and that the language of the clause is but an expression of the grantor's purpose in the future disposition of the property. It left in her a reversion after the life estate of Thomas McGarrigle, which required some future conveyance, or some testamentary disposition, to effectuate its transfer to the orphan asylum.' "* (Italics supplied.)

While we do not deem it necessary or even appropriate in this case to adopt the view of either of the foregoing courts as controlling the construction of the naked language of the deed before us, we do hold that they thoroughly demonstrate that the language used was susceptible of the meaning attributed thereto by the parties involved in this controversy.

We accordingly hold that the deed now before us was, in view of the construction placed thereon by the parties, properly interpreted by the trial court as vesting in Jane Trumbla a fee-simple title.

This case was tried by the Honorable Claude Duval and judgment rendered on July 27, 1940. The record of the judgment (entry thereof) was subsequently made by the clerk (the pronouncement, not the entry, is important; Abernathy v. Huston, 166 Okla. 184, 26 P. 2d 939). Judge Duval died on July 28th. His successor heard the motion for a new trial and overruled the same. Defendants contend the successor could not properly overrule their motion. This contention cannot be sustained. Yellow Taxicab & Baggage Co. v. Hatfield, 178 Okla. 79, 61 P. 2d 738.

Other incidental complaints are made in the brief which are not of sufficient substance to warrant discussion.

The record is free from substantial error, and the judgment is affirmed.

WELCH, C. J., CORN, V. C. J., and RILEY, OSBORN, BAYLESS, GIBSON, and HURST, JJ., concur. ARNOLD, J., absent.