Riley E. RUSH, Bertha L. Rush, Elden C. Gerken and Flossie M. Gerken, Plaintiffs in Error,

v.

CHAMPLIN REFINING COMPANY, a corporation, et al., Defendants in Error.

No. 37718.

Supreme Court of Oklahoma.

Feb. 4, 1958.

W. D. Greenshields, Ponca City, for plaintiffs in error.

Simons, Mitchell, Headrick & Mitchell, Enid, for V. L. Headrick, Douglas McKeever, Harry McKeever, Mary McKeever Bass, Edna E. Glasser, Joe H. Glasser and W. J. Otjen, defendants in error.

McKeever, Glasser, McKeever & Conrad, Enid, for Della Chaffee Rolston, defendant in error.

Crowley & Musser, Enid, for Maude Gray Moore and General Royalties Corporation, defendants in error.

Edward A. DeClerck, Enid, for W. E. Pralle and Barbara Chaffee Roberts Hare, defendants in error.

Robert C. Saunders, Tulsa, for Frank E. Brittain, Reuben E. Brittain, Sally B. Saunders and Robert C. Saunders, defendants in error.

WILLIAMS, Justice.

This action was brought by Riley E. Rush, and others, hereinafter referred to as plaintiffs, against a number of named defendants to quiet title to 240 acres of land situated in Garfield County, Oklahoma. After the action was filed, several of the defendants filed disclaimers, and one defendant, Champlin Refining Company, withdrew its original pleading, a demurrer, and was granted permission to file an answer. All of the other defendants demurred to the petition on the ground that it failed to state facts sufficient to constitute a cause of action. The trial court sustained these demurrers and, upon plaintiffs' election to stand upon their petition, dismissed the action as to all defendants except Champlin Refining Company, from which action of the court plaintiffs have perfected this appeal.

Plaintiffs' petition alleges in substance that plaintiffs are the owners of the 240 acres of land here involved; that they own $7\frac{9}{80}$ths of the oil, gas and other minerals and mineral rights in the north 160 acres of such tract, and that they own $7\frac{5}{80}$ths of the oil, gas and other mineral and mineral rights in the south 80 acres of such tract of land; that in 1925 the entire interest in said tract of land was owned by one A. Plumley, who made a conveyance, a copy of which is attached to the petition, marked exhibit "A", of $\frac{1}{16}$th of the minerals and mineral rights in all of the proper-

ty here involved to one of the defendants' predecessors in title; that on the same date the said Plumley made a second conveyance, a copy of which is also attached to the petition, marked exhibit "B", of ⅟₁₆th of the minerals and mineral rights in the north 160 acres of such tract of land to another of defendants' predecessors in title; that by transfer of title by warranty deeds plaintiffs have become and are now vested with all right, title and interest of the said Plumley in and to the property involved except that conveyed by him in the two above mentioned deeds; that defendants now own all of the interest granted in the two above mentioned deeds, and only such interest, and that said interest is confined to the amount set out in the petition; that the interest of plaintiffs is in addition to an overriding royalty owned by them and derived from an oil and gas lease owned by Champlin Refining Company; and that plaintiffs have been in adverse possession of such property since acquiring title thereto in 1954. Such petition then prays for judgment against the defendants adjudging that plaintiffs are the owners of the land and the oil, gas and other mineral rights as alleged in the petition free and clear of all claims and encumbrances of the defendants and that the defendants have no right, title or interest adverse to plaintiffs therein and that plaintiffs' title be quieted and confirmed and the defendants barred and enjoined from asserting any right, claim or interest adverse to plaintiffs' interest as alleged in the petition.

It appears from the briefs filed herein, that the controversy relates to the meaning and effect of the two deeds above mentioned, copies of which are attached to plaintiffs' petition. Plaintiffs allege in their petition and argue in their briefs that each of said deeds conveyed only an undivided ⅟₁₆th interest in the minerals and mineral rights in the property therein described, so that the respective grantees thereunder would only be entitled to ⅟₁₆th of the royalty retained under any oil and gas lease thereafter executed on either of such tracts in the event of the production of oil or gas

thereunder. Defendants, on the other hand, contend in their brief that each of such deeds constituted a conveyance of royalty rather than of a mineral interest and entitle the grantee thereunder to a full ⅟₁₆th of the total production in the event of the production of oil or gas from the premises described therein, which would be the equivalent of ½ of the ⅛th royalty apparently retained under the oil and gas lease on the premises, rather than ⅟₁₆th of such ⅛th retained royalty.

The provisions of the two deeds which the parties apparently seek to have construed are substantially similar. Each deed has a granting clause which sets over to the grantee an undivided ⅟₁₆th interest "in all of the oil, gas and other minerals now, or at any time hereafter, lying in or under" the described land, and "also an undivided like interest in all right, title and estate under and by virtue of any oil and gas mining lease or other mineral lease, which may now or hereafter exist upon said premises". Immediately following such granting clause, each deed contains a paragraph or clause providing that in the event the grantor should fail or refuse to lease the described land, then there was granted to the grantee the irrevocable right to enter upon the same and search for and drill for oil, gas and other minerals in or under the described land or that may be found therein or thereunder, subject only to the payment to the grantor, his heirs, executors, administrators and assigns, of an undivided ⅛th royalty interest in and to all such minerals which might be found and produced upon said property by said grantee or grantee's assigns, in the exercise of such option to so drill upon the described land. Each deed then contains a habendum clause and a warranty clause in customary form, neither of which contains any unusual provisions, and there are no exceptions made in the warranty clause. Following the warranty clause, there appears in each deed the following paragraph:

"It being further hereby agreed that whereas the land particularly described in this conveyance is not now subject

to any oil or gas mining lease, then and in the event the said grantor herein shall lease said described premises for oil, gas and mineral mining development thereon, this conveyance shall be subject to such oil, gas and mineral mining lease and operations thereunder, so long as this grantee, her heirs, executors, administrators and assigns, shall be paid the one sixteenth ($\frac{1}{16}$) part of the total production upon said land;"

Following such paragraph, there appears in each deed a paragraph reserving to the grantor the exclusive right to lease the land for oil and gas purposes. In the deed marked exhibit "A" any and all bonus paid for such oil and gas lease is likewise reserved to grantor, whereas in the deed marked exhibit "B" it is provided that the grantor and the grantee shall share equally in any cash bonus paid for any such oil and gas lease, and shall share equally in any delay rentals accruing under such lease. Exhibit "B" also contains a paragraph giving the grantee in effect a refusal option on any lease the grantor may be about to make, exhibit "A" then concludes with the following paragraph:

"It is hereby further expressly agreed that the intent and purpose of this conveyance is to pass to and vest in the said Ellen A. Chaffee, her heirs, executors, administrators and assigns, an undivided one sixteenth ($\frac{1}{16}$) interest in all the minerals and mineral rights in the land first described herein and that at any time may be found therein or thereunder; subject only to the grantor's rights to deal and contract with regard thereto as he may deem best as hereinbefore set out and reserving to the grantor such bonus or other cash sums as may be paid for the execution and delivery of an oil, gas and mineral mining lease upon said lands; expressly reserving to the said Ellen A. Chaffee the right to share only in the oil, gas or other minerals produced upon the said lands to the extent of the one sixteenth ($\frac{1}{16}$) part thereof."

The "intent clause" in exhibit "B" is as follows:

"It is hereby further expressly agreed that the intent and purpose of this conveyance is to pass to and invest in the said R. E. Brittain, his heirs, successors and assigns, an undivided one sixteenth ($\frac{1}{16}$) interest in all the minerals and mineral rights in the land first described herein and that at any time may be found therein or thereunder; subject only to the grantor's rights to deal and contract with regard to the leasing of said land as he may deem best, as hereinbefore provided, together with the right upon the part of the grantee to receive an equal one-half ($\frac{1}{2}$) portion of any cash bonus which may be hereafter paid for the execution and delivery of any oil, gas and mineral mining lease on said premises, together with the further right to receive equal one-half ($\frac{1}{2}$) portion of any delay money or cash rental paid for the delay in the drilling of any oil or gas well under the terms and conditions of any such lease which may be so executed and delivered."

Exhibit "B" then concludes with several paragraphs pertaining to a small well already existing on the premises, which provisions apparently have no bearing upon the question in controversy.

A deed should be interpreted and the meaning of the parties thereto ascertained in the same manner as other written contracts. Jennings v. Amerada Petroleum Corporation, 179 Okl. 561, 66 P.2d 1069. The language of the contract, if clear and explicit and free from ambiguity, governs the interpretation, 15 O.S.1951 § 154; and when the contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible. 15 O.S.1951 § 155. Unless the instrument is ambiguous, it is the duty of the court to interpret it and parol evi-

dence is not competent to explain it or to vary its terms. Jennings v. Amerada Petroleum Corporation, supra. When a deed possesses an element of ambiguity or uncertainty, however, parol evidence, the admissions of the parties and other extraneous circumstances may be proved to ascertain its true meaning. This rule is applicable, however, only when the uncertainty or ambiguity is intrinsic and is shown on the face of the instrument. Jennings v. Amerada Petroleum Corporation, supra, Wilson v. Olsen, 167 Okl. 527, 30 P.2d 710.

■■ In each of the deeds here under consideration, there is a substantial element of uncertainty and ambiguity apparent on the face of the instrument. The general rule is that a deed should be construed in its entirety without undue reference to any part, so as to give effect to the manifest intention of the grantor. Bascom v. Maxey, 195 Okl. 259, 157 P.2d 158. The deeds here involved, however, contain provisions which are completely contradictory and incompatible with other provisions of the same instrument, and in the case of exhibit "A" even the "intent clause" expresses two contradictory and conflicting intentions in the same sentence. Such being the case, the intention of the grantor in these instruments is far from manifest. Under such circumstances we are of the opinion that the trial court erred in sustaining defendants' demurrer to plaintiffs' petition.

The only two cases which have been called to our attention in which this court has affirmed the action of a trial court in sustaining a demurrer to the petition in a quiet title action are Bascom v. Maxey, supra, and State ex rel. Com'rs of Land Office of State v. Bingaman, Okl., 299 P.2d 168. In Bascom v. Maxey, supra, we said that where it clearly appears from the plaintiffs' petition, together with the exhibits attached thereto and made a part thereof, that the plaintiff has no interest in the land involved, it is not error to sustain a general demurrer to the petition. And in State ex rel. Com'rs of Land Office of State v. Bingaman, supra, we said that where it clearly appears from the plaintiff's petition that plaintiff has no interest in the minerals involved, it is not error to sustain a general demurrer to the petition. No such statement can be made in the case at bar. On the contrary, it must be said that plaintiffs' petition and the exhibits attached thereto plainly show that plaintiffs own the surface and at least some portion of the minerals in and under the real property here involved, although there is considerable question as to the amount or extent of the mineral ownership. However, such question cannot be resolved by sustaining a demurrer to plaintiffs' petition.

The judgment is therefore reversed and the cause remanded with instructions to overrule the various demurrers to plaintiffs' petition.

DAVISON, HALLEY, JOHNSON, BLACKBIRD, JACKSON and CARLILE, JJ., concur.

WELCH, C. J., concurs in result.

CORN, V. C. J., dissents.