RETTIE CUTSHAW v. OSCAR SHELLEY, et al.

Eastern Section. December 23, 1931.

Petition for Certiorari denied by Supreme Court, May 23, 1931.

Jno. C. Crawford and H. D. Bailey, both of Sevierville, for appellant.

A. M. Paine and Zirkle & Bowers, all of Sevierville, for appellee.

PORTRUM, J. The complainant filed this bill against her mother, brothers and sisters, to partition 70 acres of land, and for a construction of the deed covering the land in order to determine the rights and interests of the mother and children therein. The Bank of Sevierville was made a party defendant as the holder of notes secured by a trust deed upon the land, executed by the mother and some of the children, and for the purpose of removing this trust deed as a cloud from the interests of those who did not join in its execution. The complainant's right to partition is dependent upon her interest in the land and if the deed is a vested interest or a contingent interest. This interest is determined from a construction of the deed under which she and her co-tenants claim. The material part of this deed reads:

"I, Elijah Ballard, hereby transfer and convey to Emily Barthula Cunningham the following described tract of land, to her use and benefit and her children and their benefit, the said land lying in Sevier County in District Number Fourteen on the waters of Saginaw Creek, bounded as follows: Beginning on a hickory . . . to the beginning, by estimation seventy acres of land, and I warrant the above title against all persons whomsoever.

"Witness my hand and seal this the 11th day of October, 1884."

The grantor, Elijah Ballard, was the father of Emily B. Cunningham, the main grantee; at the time of the execution of the deed, the grantee, Emily B. Cunningham, was a widow with three minor children and these children were living with their grandfather, the grantor. The names of these children were Grettie Cunningham, J. W. Cunningham and Bennie Cunningham. Eleven years after the execution of this deed the mother married a man by the name of Shelley, and two children were born when Bennie Cunningham died at about the age of fifteen years, and his interest, if a vested interest, descended to his heirs at law. Thereafter another child was born. These five children survived and are parties to this suit; the second husband, Shelley, is now dead.

The parties assert title to the land as follows:

1. The widow, Emily B. Shelley, says that she owns the land in fee, (a) that the only interests her children took was the right to live with her in their home and enjoy the fruit of the income, (b) that the conveyance was complete when she was named as grantee, and the words "and her children and their benefit" were surplusage.

2. The complainant insists that the deed passed title to her mother and her and her two brothers as tenants in common at the time of its execution; that the grandfather had in mind the mother and her three children and he intended to convey the land to them as individuals and not as a class; that if the conveyance was made to the grantees as a class, the class included the mother and since she was individualized the class doctrine fails, and the mother and three children take the property as individuals and tenants in common.

3. The children by the last marriage claim that they have an interest in the land because their mother took a life estate in the property and the remainder interest passed to her children as a class which opened and permitted the entry of after born children, therefore they have an equal interest with the children by the first marriage.

The chancellor construed the deed as follows:

"The court finds that under the terms and provisions of said deed from Elijah Ballard to said Emily B. above referred to, that the title in and to said tract of land was vested in said Emily B. Cunningham in trust for herself for life and then for her children, such as were then in existence and such as have been born since the execution of said deed. That said children take the remainder interest in said land as a class at the date of the death of said Emily B."

We will consider the contention of the parties in the above order. The mother did not take the fee in this estate; we have examined

the three cases relied upon as authorities for the position that the children only took an interest in the use clause, or the right to live in the home and enjoy the fruits of the farm while they were members of the family; the facts in these cases are dissimilar to the facts in this—the cases are Hix v. Gosling, 69 Tenn., 561, Harris v. Anderson, 36 Tenn., 251, and Moore v. Simmons, 39 Tenn., 545. And we cannot regard the reference to the children as surplusage. Beecher v. Hicks, 75 Tenn., 211; Code 1858, Section 2006.

The Cunningham children insist that the property went to their mother and themselves as tenants in common. This is true if the mother was not given a life estate and the children the remainder. We had as well state here that we think the mother was given a life estate and the remainder passed to her children, because:

"A very slight indication of an intention that the children shall not take jointly with the mother will suffice to give the estate to the mother for life, with remainder to her children, as well in the case of a deed (Moore v. Simmons, 2 Head, 546), as of a will." Beecher v. Hicks, 75 Tenn., 210.

"A bequest to a mother and her children, without more, would give an equal interest to each in the legacy; (citing authorities). A slight indication of an intention that the children shall not take jointly with the mother, would give a life estate to the mother, with the remainder to the children; (citing authorities). And the fact that there were no children at the death of the testator would be a sufficient circumstance to require the latter construction." Cannon v. Apperson, 82 Tenn., 576.

We think the indication of an intention to give the mother a life estate is present in this deed; the benefits were divided, "to her use and benefit and her children and their benefit." The interest being divided, it necessarily follows that one must preclude the other and the last was deferred until after the enjoyment of the first. We think this sufficient to indicate a purpose on the part of the grantor to give to the mother a life estate, with the remainder to her children.

However, it is further insisted, in the event the mother took a life estate then the three living children, at that time, took a present interest in the remainder, and they, as grantees, were individualized, so the remainder passed to them at that time as a vested remainder. A gift to children without naming any of them is a gift to a class.

"If the persons to take can be ascertained only by inquiring who answers the general description, there being no other special designation of them, they necessarily take as a class, and those who take take all." Rood on Wills, Sec. 43, page 417.

"The class notion is disintegrated by any language in the will from which the Court can see that the testator or testatrix had in

mind any special inviduals as the object of the bounty intended as distinguished from a composite class.'' Tate v. Tate, 18 Cates (126 Tenn.), 179.

There is nothing in the deed or in the evidence, that could indicate the grantor had in his mind any particular individual as the children of the grantee, to the exclusion of other children. We are, therefore, of the opinion that there is nothing to individualize the first children as joint grantees in the remainder.

The class doctrine has been re-established in favor as a rule of property in this state. The cases are fully reviewed and the doctrine explained in the case of Sanders v. Byron, 112 Tenn., 472, and again discussed in the case of Tate v. Tate, supra. This is the defined rule in the former case:

''It is observed that there are three elements in the rule. One is that there must be a class of persons subject to fluctuation by increase or diminution of its number; second, that the bequest must be to the class; and, third, that the time of payment or distribution must be fixed at a subsequent period.''

The first two elements are easy to apply, but the third is difficult for the reason that all remainders are deferred in their enjoyment until the falling in of the life estate.

''This doctrine, like the rule in Shelley's case, is not difficult to state, but, also like the rule in that case, it is difficult to apply to concrete facts. The difficulty, we think, has arisen out of the effort to escape its effect by making subtle distinctions. The better course, as it seems to us, is to adhere to the plain rule, unless there is clear indication in the will, or other instrument, that the maker of it had in mind particular individuals. Otherwise, grievous mistakes will continue to be made in the construction of instruments on which other property rights are based.'' Tate v. Tate, supra.

We do not think the grantor, in this case, had in mind any particular child or children, but spoke of his daughter's children as a class. Therefore, the enjoyment of the estate was necessarily deferred until the falling in of the life estate, for the reason that no particular person had an interest to enjoy unless he survived and was a member of the class at the falling in of the life estate. These three elements of the rule are met, and the class doctrine applies in this case.

The widow is the only person having a vested interest in this property that can be charged for debts. The trust deed, executed to the Bank of Sevierville, by some of the second children passes no present interest that can now be enforced; if those who executed the deed do not survive the widow no interest in the property will rest in them. Then if those who did not sign the deed survive the

widow, their interests will not be subject to the payment of the debt secured by the trust deed.

The complainant has no right to assert partition of the land for the reason she has no present interest in it, her interest is only a contingent interest; she may never have a vested and partitionable interest in the property. For the same reason tenants with contingent interests can commit waste by cutting, removing and selling the timber from the land; the proceeds from the sale of this timber must be impounded and preserved, awaiting the falling in of the life estate, and the vesting of the interests in the parties then entitled thereto. Of course, the widow, whose interest is vested, is entitled to the value of her life estate in the proceeds from the timber. The chancellor correctly restrained the children from committing other acts of waste.

The decree of the chancellor takes care of these contingencies, as well as correctly defines the interests of the parties in the real estate. There is no error in the decree of the chancellor and it is affirmed. All of the parties except one, who is a nonresident, have assigned errors in this Court, and, therefore, the costs of the appeal should be divided against the parties equally.

Snodgrass and Thompson, JJ., concur.