**UNITED STATES v. 654.8 ACRES OF LAND IN ROANE COUNTY, TENN. et al.**

No. 1282.

United States District Court
E. D. Tennessee, N. D.

Feb. 12, 1952.

938

Otto T. Ault, U. S. Dist. Atty., Ferdinand Powell, Jr., Asst. U. S. Dist. Atty., Knoxville, Tenn., for petitioner.

Jennings, O'Neil & Jarvis, Knoxville, Tenn., Ladd & Qualls, Harriman, Tenn., for respondents.

ROBERT L. TAYLOR, District Judge.

This action began as a condemnation proceeding for the acquisition by petitioner of lands of Mattie Brooks et al., and other lands in Roane County, State of Tennessee. The acquisition has been completed and a jury, as to the tract of land here in question, has made its award of compensation. The problem presently before the Court relates to division of the proceeds and calls for the construction of two deeds, one made by S.M. Brooks in 1909, the other by Alice Brooks, his wife, in 1938.

Respondents as to Tract No. 0–1420, the land affected by the mentioned deeds, are Mattie Brooks, S. F. Brooks, Mary Ruth Edmonds, Ruby Edmonds and the children of Vida Brooks Wyatt, deceased.

First of the two deeds under examination was executed by S. M. Brooks, May 25, 1909. Its consideration and granting clauses are as follows: "For and in consideration of the love and affection I have for Alice Brooks and the sum of one dollars paid in hand the receipt whereof is hereby acknowledged, I, S. M. Brooks doth convey and transfer unto Alice Brooks her heirs, the children of S. M. Brooks and the said Alice Brooks forever * * *."

. . The habendum is as follows: "To have and to hold the said tract or parcel of land with the appurtenances Estate, title and interest thereto belonging to the said Alice Brooks her heirs, the children by the said S. M. Brooks."

The rest of the deed contains only a description of the land therein conveyed. The instrument was duly acknowledged and recorded. It has been stipulated by the parties that at the time this deed was executed S. M. Brooks and his wife, Alice Brooks, had the following living children: Mattie, Fred (S.F.), Mary Ruth, Willis, and Vida. It has been stipulated, also, that Ruby, another child, was born in 1911, two years after the execution of the deed; that Willis died intestate and unmarried on May 4, 1941; that Alice Brooks died intestate July 13, 1940; and that S. M. Brooks died intestate October 11, 1942. On the foregoing facts the question is, what estates and in whom were the estates created by the S. M. Brooks deed of 1909?

The deed of Alice Brooks on November 28, 1938, contained the following recitations:

"For and in consideration, of the sum of One ($1.00) Dollar cash in hand paid

to me, the receipt of which is hereby acknowledged and other good and valuable considerations not herein necessary to mention, I Mrs. Alice Brooks (wife of S. M. Brooks) of Roane County, Tennessee, have this day bargained and sold, and do by these presents hereby sell, transfer and convey unto Mattie Brooks, Mary Ruth Brooks, and Ruby Brooks of Roane County, Tennessee, and their heirs and assigns the following described tracts * * *.·

"To have and to hold the property above conveyed and described together with the hereditaments and appurtenances thereunto appertaining, and every right and interest therein both legal and equitable unto said Mattie Brooks, Mary Ruth Brooks and Ruby Brooks and to their heirs and assigns in fee simple forever. * * *

"The within property is conveyed in equal share, but the ones or one that is single at the time of the death of party of first part shall have the place where the house is in addition to equal number of acres, and the land if ever divided shall be divided for partition and not sold for partition."

Parts of this deed, not above quoted, relate to description and covenants of warranty, the quoted words being all that have any bearing on the nature of the conveyance.

It was because of this second deed that the titleholders could not agree as to division of the money paid into Court by the condemnor, Mattie Brooks being the unmarried one of the three sisters and, by reason of the last quoted paragraph, claiming a larger share of the condemnation proceeds than she is willing to concede to the two married sisters.

Some years ago the Tennessee Valley Authority by a condemnation proceeding in this Court, acquired lands, or an interest in lands, of the S. M. Brooks family. A special master, whose report was confirmed by a former judge, construed the S. M. Brooks deed of 1909 as creating estates in common in Alice Brooks and the then living children of S. M. Brooks and Alice Brooks. The children listed in the report included Ruby but omitted Willis, whereas the proof now available shows that Willis was living in 1909 but that Ruby was not born until two years afterwards. The 1938 deed of Alice Brooks was construed as conveying to the three daughters, Mattie, Ruth and Ruby, only the undivided interest of Alice, a result of the master's construction of the two deeds being that Mattie, Ruth and Ruby claimed a larger interest in the land than the interest conceded to Willis, S. F. (Fred) and Vida, or Vida's children. No objection was urged to the interpretation thus placed on the two deeds in connection with the Tennessee Valley Authority acquisition.

It is not insisted that the former construction of the deeds is res judicata, but it is urged that the former construction is at least persuasive of the construction that should now be given. This Court naturally would follow in the footsteps of the able judge who heard the Tennessee Valley Authority proceedings, if no question had been raised here as to their correctness. The doctrine of former adjudication, however, even if applicable otherwise, could hardly be applied as to matters where the present record discloses error in the former.

■ Construction of the S. M. Brooks deed of 1909 presents a problem in real property law that is not new. The law in Tennessee with respect to a conveyance of this kind stems from an old English decision, commonly referred to by text writers as the rule in Wild's Case. The rule deals with a number of situations, but the one relevant here may be stated as follows: A devise to W and her children, W then having living children, vests the title in W and her then living children jointly, to the exclusion of afterborn children. Wild's Case, 6 Rep. 17 (Eng.). This would state the general rule in Tennessee, except that joint tenancies have been converted into tenancies in common by statute. Williams' 1934 Code, sec. 7604. In this State a will and a deed are on an equal footing with respect to applicability of the rule. Beecher v. Hicks, 75 Tenn. 207, 209. The reason for the rule apparently stems from the feudalistic aversion to having the fee in abeyance. Under the rule, accordingly, the

vesting of title is *in praesenti,* that is, taking place at once by vesting in persons in being.

An example of unqualified application of the rule is found in Livingston v. Livingston, 1886, 84 Tenn. 448, where the grantor conveyed land to his wife, Mary, and his children. At the date of the deed, the grantor and his wife Mary had two children. It was held that Mary and the two children took as tenants in common, to the exclusion of afterborn children.

Such is the rule, but its votaries have been none too ardent. Where the conveyance creates a life estate in the parent with remainder to the children, the rule does not apply. Accordingly the remainder estate opens to let in afterborn children. Blackburn v. Blackburn, 1902, 109 Tenn. 674, 73 S.W. 109. The same result is reached where the conveyance is in trust for the wife and her children. Ragsdale v. Mabry, 1874, 67 Tenn. 300. In Blackburn v. Blackburn, 109 Tenn. 674, 73 S.W. 109, the court stated the general rule, which is the rule in Wild's Case. But it went beyond the rule, not limiting itself to the language of the granting clause and of the habendum. From the context of the deed, the court determined that the grantor intended to create a life estate in the grantee, with remainder to the children. That decision was in line with the earlier case of Beecher v. Hicks, 1881, 75 Tenn. 207, where the words in the habendum "to have and to hold * * unto her the said Sarah Catherine Hicks, * * * for her sole and separate use and benefit, and * * * to the children of the said Catherine upon her body begotten by her said husband * * *," were construed as creating a life estate in Sarah Catherine Hicks, and a remainder to all of her children, including the afterborn.

In that case the court stated the rule with a variation: "A conveyance of land directly to a woman and her children *without more,* she then having children, would vest the title in her and her children equally." (Italics supplied). Examination of the deed disclosed that it was not a conveyance "without more", but included additional language from which an intention on the part of the grantor to create in Sarah a

life estate could be inferred. In that case the court used these significant words: "And a very slight indication of an intention that the children should not take jointly with the mother will suffice to give the estate to the mother for life, with remainder to her children." 75 Tenn.209.

An examination of the S. M. Brooks deed, if limited to the granting and habendum clauses, would disclose nothing to take it out of the rule in Wild's Case. But it does contain "a very slight indication of an intention that the children should not take jointly with the mother." The deed begins as follows: "For and in consideration of the love and affection I have for Alice Brooks * * * I, S. M. Brooks doth convey * * *." Contrast that language with that in Livingston v. Livingston, 84 Tenn. 448, where the grantor used the following words in stating the consideration: " * * * and the love and affection he bears his said wife and children * * *." In the Livingston deed, wife and children were joined together in the grantor's love and affection. In the Brooks deed, love and affection were limited to Alice Brooks, the wife.

In Blackburn v. Blackburn, 109 Tenn. 674, 679, 73 S.W. 109, 110, the court, after statement of the rule, said: "But if the deed, when taken altogether, discloses a purpose upon the grantor's part that all the children of the mother, without regard to the time of their birth, shall become beneficiaries of the property conveyed, then to effectuate this purpose the mother will be converted into a tenant for life, and the children into remaindermen, the remainders vesting in those living at the date of the instrument, and the estate opening upon the subsequent birth of children so as to embrace them; * * * And a slight indication will induce the courts to adopt the construction of the deed which will effectuate the intention of the grantor. Moore v. Simmons, 2 Head, 546; Beecher v. Hicks, 7 Lea, 207." Among the slight indications of the grantor's intention to create a life estate in the first taker, the court observed: "The moving consideration for its execution was the 'love and affection he bore his daughter and her children.' If his purpose

was to make the then living children of his daughter the special objects of his bounty, it would have been an easy matter for the grantor to have named them, so as to leave doubt impossible. In addition, this would be the natural mode of expressing such purpose. But, familiar as the grantor was with his daughter's family, he forbore to name them as grantees, but used the broad and generic term 'children,' comprehensive enough to embrace all those who at any time were born to his daughter."

 The language in the Brooks deed, namely, "For and in consideration of the love and affection I have for Alice Brooks * * *", indicates that the grantor meant to favor her by giving her the estate for life, with remainder to all of their children, living and afterborn. From her point of view, the life estate was the more valuable estate, as it could not have been alienated involuntarily as an estate in common could have been. It is true that the indication of the grantor's intention to create a life estate in his wife is slight. But a study of the cases shows that the rule in Wild's Case is not so firmly entrenched in this State, but that a slight indication of variant intention is sufficient to justify a court in by-passing it.

A reason, not written into the cases but which might well be written, is that by-passing of the rule in a case like this satisfies the requirements of plain justice. If it were held that the grantor intended to make his wife Alice and their then living children tenants in common, it would be necessary to hold, also, that he intended the inequality sustained by the afterborn child Ruby. In the distribution of the proceeds as to Tract No. 0-1420, Mattie and Mary Ruth would each have received approximately $3,024.75, while Ruby would have received only $1,052.08. Such a result does not accord with the general nature of parental intentions, and the obvious injustice of it should explain in large measure why it has been held in this State that a very slight indication of the grantor's intention to create a life estate in the first taker will defeat the rule in Wild's Case.

This Court, accordingly, construes the S. M. Brooks deed of 1909 as creating a life estate in Alice Brooks and a remainder interest in the children of S. M. and Alice. Under the rule prevailing in Tennessee, the remainder estate opened to admit the afterborn child, Ruby Brooks, so that all of the children of S. M. and Alice became equal tenants in common of the remainder.

It follows that the 1938 deed of Alice Brooks to the three daughters, Mattie, Mary Ruth and Ruby, conveyed only the life estate of Alice, which terminated upon her death July 13, 1940. Owners of the remainder were left as owners of the land in fee simple, as tenants in common. Those owners were Mattie, S. F. (Fred), Mary Ruth, Ruby, Willis, and the children of their deceased sister Vida. When Willis died intestate and unmarried May 4, 1941, his undivided interest descended to his living brother and sisters and the children of the deceased sister Vida (Mrs. Wyatt).

The final result is, that Mattie, Fred, Mary Ruth, and Ruby each became the owner of one-fifth undivided interest, or the four together a total of four-fifths, while Vida's children became owners of the one-fifth their mother would have taken, had she been living. The proceeds available from the condemnation of the land should, accordingly, be divided in that proportion.

Let the appropriate order be prepared.