McSWAIN, et al. *v.* GRIFFIN.

October 26, 1953

No. 38886 40 Adv. S. 54 67 So. 2d 479

518

T. *Price Dale,* Hattiesburg, for appellants.

*Ben Stevens, Jesse M. Byrd,* Hattiesburg; *L. Barrett Jones,* Jackson, for appellee.

**KYLE, J.**

Martha McSwain and others, complainants, filed their bill of complaint in the Chancery Court of Perry County against Dandy Griffin, Jr., defendant, seeking to establish a constructive or resulting trust in their favor in and to a 40-acre tract of land purchased by the defendant from the State of Mississippi under a forfeited tax land patent dated March 30, 1939. The complainants in their bill alleged that the forfeited tax land patent was procured by the defendant by fraud and misrepresentation of the true facts concerning the ownership of the 40-acre tract of land at the time of the sale of the land for taxes, and that the defendant for reasons stated in the bill was also estopped to purchase the tax title and assert the same against the complainants, who were the heirs of Bell Griffin, deceased, the owner of the land at the time of the sale of the land to the State for delinquent taxes.

The defendant filed a motion suggesting that the State Land Commissioner was a necessary party and asked that the suit be abated until the Land Commissioner should be made a party to the suit. The complainant then filed an amended bill, in which two other heirs of Bell Griffin joined as complainants, and in which the Land Commissioner was named as a defendant. Separate answers

to the amended bill were filed by Dan Griffin, Jr., and the Land Commissioner; and the cause was heard at the October, 1952, term of the court upon the pleadings and the proof offered on behalf of the complainants. The defendants offered no testimony of any kind.

The facts alleged in the pleadings, as to which there was no substantial dispute, were as follows:

Dandy Griffin, Sr., on March 30, 1929, was the owner of the tract of land described as the N½ of the N½ of Section 26, Township 2 North, Range 9 West, less 47 acres which he had previously sold to other persons; and on that date Dandy Griffin, Sr., executed a warranty deed conveying to his wife, Bell Griffin, the 40-acre tract of land described as the Northwest Quarter of the Northeast Quarter of said section. Dandy Griffin, Sr., died on July 24, 1930.

The land described as the "N½ of N½, less 47 acres previously sold, Sec. 26, T. 2 N, R 9 W," was assessed for taxes for the year 1929 in the name of Dandy Griffin as the owner. The above mentioned 47 acres not included in Dandy Griffin's assessment were separately assessed to other parties. The taxes on the land assessed to Dandy Griffin for the year 1929 were not paid when due, and all of said land, including the 40-acre tract conveyed to Bell Griffin, was sold on April 7, 1930, for the 1929 taxes and was struck off to the State. The land was not redeemed from the tax sale within the two-year period allowed by the statute, and the title to the land matured in the State. Bell Griffin, however, continued to reside on the 40-acre tract until her death in 1947.

On October 4, 1938, Dandy Griffin, Jr., a son of Dandy Griffin, deceased, by a former marriage, filed an application with the State Land Commissioner for the purchase of the above mentioned "N½ of N½, less 47 acres previously sold, Sec. 26, T 2 No., R 9 W," and on March 30, 1939, a forfeited tax land patent was issued to him conveying to him the land described in the application.

The application was made out on a printed form and contained the following answers to questions relating to the former ownership and occupancy of the land: "Name of person living on the land at the present time—Alfred Griffin." "Name and post office address of owner of land at the time of sale to the State—Dandy Griffin, McLain, Miss." "Name and address of person to whom land was assessed at the time of tax sale—Dandy Griffin." The application was signed: "Dandy X Griffin," Address: "McLain, Miss."

The complainants alleged in their amended bill that Dandy Griffin, Jr., was guilty of fraud in the filing of the above mentioned application, in that he failed to state in the application that Bell Griffin was living on the land at the time of the filing of the application, and in that he failed to show in the application that the former owner and the person to whom the property was assessed at the time of the tax sale was Dandy Griffin, Sr., the father of the applicant and not the applicant himself.

The complainants further alleged in their amended bill that at the time the said Dandy Griffin, Sr., conveyed the 40-acre tract of land to Bell Griffin a lien for the State and county taxes for the year 1929 had already attached, and that it was the duty of the said Dandy Griffin to pay said taxes after they were properly levied and assessed for the year 1929, and to discharge the tax lien; that Dandy Griffin, Jr., was a son of Dandy Griffin, Sr., and one of the heirs of the said Dandy Griffin, Sr., and that he was estopped to acquire title to the 40-acre tract by a purchase of the land from the State after the title had matured in the State, and that by his purchase of the tax title he became a trustee for the said Bell Griffin and her heirs. The complainants asked that their rights to the land be established by a proper decree of the court and that title to the 40-acre tract be vested in

them and that Dandy Griffin, Jr., be required to account for the rents received by him from the land since the date of the purchase of the tax title.

The defendant, Dandy Griffin, Jr., in his answer denied the allegations of fraud contained in the bill of complaint, and he denied that he was estopped from purchasing the 40-acre tract of land from the State. He averred in his answer that his purchase of the land from the State was in all respects valid and that he was the owner of the land under and by virtue of the forfeited tax land patent. The Land Commissioner filed a separate answer in which he stated that no fraud had been perpetrated against the State in the procurement of the tax patent, and he denied the "trustee" relationship of the purchaser as alleged in the bill of complaint.

On the hearing before the chancellor the complainants offered in evidence a certified copy of the application filed by Dandy Griffin, Jr., on October 4, 1938, for the purchase of the above mentioned tract of land from the State. The complainants then called Dandy Griffin, Jr., as an adverse witness; and Dandy testified that his father, Dandy Griffin, Sr., died on July 24, 1930, and that Bell Griffin was his father's second wife. The complainants offered no other testimony and the defendants rested.

At the conclusion of the hearing the chancellor entered a decree dismissing the bill of complaint with prejudice, and from that decree the complainants prosecute this appeal.

Two points are argued by the appellants' attorneys as grounds for reversal on this appeal: (1) That the appellee was guilty of fraud in the procurement of the tax patent from the State, and (2) that the appellee, being a son and heir of Dandy Griffin, Sr., was estopped, as against Bell Griffin and her heirs, to purchase Bell's 40-acre tract from the State, and being so estopped, when

he purchased the land he took title to the same as trustee for Bell Griffin and her heirs.

 We think that the evidence offered on behalf of the appellants was insufficient to show fraud or such false representations in the procurement of the tax patent as would have justified the court in cancelling the patent even in a suit filed by the Land Commissioner. The fraud alleged in the bill of complaint related entirely to the appellee's failure to explain in his application that he was not the same person as the "Dandy Griffin" to whom the land was assessed for taxes in 1929, and that Bell Griffin was still living on the land at the time the application to purchase was filed. It is true that the appellee was Dandy Griffin, Jr., during his father's lifetime, and the information contained in the application to purchase would have been more accurate, if a statement had been inserted in the application to the effect that Dandy Griffin, Sr., the former owner, had died in 1930, and that the applicant was his son. But the omission of such statement under the facts in this case did not necessarily mean that Dandy Griffin, Jr., was guilty of fraud in the procurement of the tax patent. Dandy Griffin, Jr., was apparently illiterate, since he signed the application by the use of a mark. At the time the application was filed he was 62 years of age, and his father had been dead many years. Under these circumstances the failure to add the suffix, "Jr.," after his signature to the application constituted but slight evidence of an intention to mislead or deceive. The suffix, "Sr." or "Jr.," added to a name is ordinarily not a part of the name, although under some circumstances it may be appropriate or even required to be so regarded. 65 C. J. S., p. 7, Names, par. 5b, and cases cited. Bell Griffin should have been named in the application along with Alfred Griffin as one of the persons living on the land at the time the application was filed, but the failure to mention her name in the application, without other

proof of a fraudulent intent, was not sufficient in itself to show such fraudulent intent.

But even if fraud had been proved the complainants would have been unable to recover the land for them-selves on that account. The validity of the tax sale was not challenged; and, as stated by this Court in the opinion rendered in the case of Reliance Inv. Co. v. Johnson, et al., 188 Miss. 227, 193 So. 630, the validity of a patent from the State can be challenged on the ground of fraud in the procurement of the patent only in a proceeding instituted for that purpose by the Land Commissioner. Whatever rights the appellants' mother had in the land in question were totally extinguished by the tax sale to the State and the lapse of the period of redemption, and what the State did with its admittedly complete and valid title was of no concern to the appellants from a legal standpoint.

The appellants' most serious contention, however, is that even though the tax sale was valid and the purchase of the land from the State by Dandy Griffin, Jr., in 1939 was valid, the appellee should be deemed to hold the title to the Bell Griffin 40-acre tract as a trustee for Bell Griffin and her heirs, for the reason that Dandy Griffin, Sr., had he lived, would have been estopped, as against Bell and her heirs, to purchase Bell's 40-acre tract from the State and assert the after acquired title against Bell and her heirs, and that the estoppel, which would have precluded Dandy Griffin, Sr., from asserting the after acquired title against Bell and her heirs, applies with equal force against his heirs. And the appellants cite, in support of this contention, the statement contained in 19 Am. Jur., p. 811, Estoppel, par. 155, that ''An heir being in privity with the ancestor is bound by an estoppel which was binding upon the ancestor.'' The appellants also cite in support of their contention on this point the cases of Robins, et al. v. McMillan, 26 Miss. 434, and

Nixon's Heirs v. Carco's Heirs, 28 Miss. 414, which will be discussed later in this opinion.

The doctrine of after acquired title has long been recognized by our own Court. Robins v. McMillan, supra; Nixon's Heirs v. Carco's Heirs, supra; Bush v. Cooper, 26 Miss. 599; Kaiser v. Earhart, 64 Miss. 492, 1 So. 635; Andrews v. Anderson (Miss.), 16 So. 346; Harris v. Byers, 112 Miss. 651, 73 So. 614; Mississippi Sawmill Co. v. Douglas, 107 Miss. 678, 65 So. 885; Meyers, et al. v. American Oil Co., 192 Miss. 180, 5 So. 2d 218; Lee v. Magnolia Bank, 209 Miss. 804, 48 So. 2d 515. In the case of Meyers, et al. v. American Oil Co., supra, the Court said: ██ ██ ''Nothing is better settled in this State than the rule that the grantor and all persons in privity with him shall be estopped from ever afterwards denying that, at the time his deed of conveyance was executed, he was seized of the property which his deed purported to convey, and that mortgages and deeds of trust are within this rule.''

But we do not think that the doctrine of after acquired title applies in the case that we have here. Dandy Griffin, Jr., acquired title to the above mentioned 40-acre tract of land, not by descent as an heir of Dandy Griffin, Sr., but by purchase from the State in 1939. ██ ██ And an heir is not bound by a warranty given by his ancestor if he claims by purchase and not by descent. 19 Am. Jur., p. 812, Estoppel, par. 155. ''Covenants, estoppels, or the rule as to after acquired title, where operating against the ancestor, do not, however, operate against the heirs as to the property not inherited from such ancestor, but taken from an independent source. Hence, ██ ██ an heir is not bound by such covenant, estoppel, or rule as to after acquired title with respect to property taken by purchase, devise or inheritance from another.'' 16 Am. Jur., p. 800, Descent and Distribution, par. 33.

In the case of Oliver, et al. v. Piatt, 3 How. (U. S.) 333, 11 Law Ed. 622, which is frequently cited by the courts

and the text writers, the Supreme Court of the United States held that a warranty, either lineal or collateral, is no bar to an heir who does not claim the property to which the warranty is attached by descent, but as a purchaser thereof. Justice Storey, in delivering the opinion of the Court in that case, said: ''Another objection taken at the argument is, that Baum's heirs cannot insist upon any title to the property in question, because they are bound by the warranty of their ancestor in the conveyance thereof to Oliver. But this objection has no foundation whatsoever in law, whether the warranty be lineal or collateral; for the heirs here do not claim any title to the property by descent, but simply by purchase; and it is only to cases of descent that the doctrine of warranty applies.''

In the case of Benson, et al. v. Benson, et al., 180 N. C. 106, 104 S. E. 68, the Court held that where an heir apparent executed a conveyance covering certain realty of which his father was seized, and subsequently died before the death of his father, the children of such heir apparent were not estopped by their father's deed from claiming an interest in the property conveyed to them as heirs of their grandfather.

In the case of Wm. D. Cleveland & Sons v. Smith, et al., (Tex. Civ. App.), 113 S. W. 547, the Court held that a warranty in a deed only binds the grantor's heirs to the extent of the property received by them from the grantor's estate, which being insolvent, the heirs were not estopped to acquire a title adverse to that conveyed by the ancestor. In that case the appellant, a corporation, had purchased the land on April 4, 1895, at a foreclosure sale under a mortgage deed of trust executed by George W. Smith's father, W. H. Smith. The heirs of J. T. Armstrong held a prior purchase money lien on the property, and on April 16, 1897, they sold the land to George W. Smith, one of the appellees, for the face value of the notes. The appellant contended that George W. Smith

as a legal heir of W. H. Smith was estopped from acquiring a title adverse to that conveyed by his father. The Court held that the contention was without merit; and in its opinion the Court said: "The warranty of W. H. Smith would only bind his heirs to the extent of the property received by them from his estate, and the evidence shows that the estate was insolvent, and George W. Smith therefore could have received no property therefrom." The Court in its opinion also said: "The doctrine of estoppel upon which that of after acquired title rests does not depend upon the covenant of warranty, but it certainly cannot be held that such doctrine should apply to one who is not a grantor in the deed upon which the estoppel is sought to be predicated and is not bound by the covenant of warranty contained in such deed."

The principle of estoppel by deed and the doctrine of after acquired title were discussed and applied by our own Court in the two early cases of Robins v. McMillan, 26 Miss. 434, and Nixon's Heirs v. Carco's Heirs, 28 Miss. 414, both of which are cited by the appellants in their brief on this appeal.

In the case of Robins v. McMillan, supra, the controversy arose over the claim of the appellants, who were the children of William C. Maxwell, deceased, to a distributive share of the estate of Thaddeus J. Maxwell, deceased, the appellants claiming as next of kin of the deceased. The claim was contested by the appellee, as administrator, who filed a special plea in bar of the claim in which he averred that the father of the appellants, in his lifetime, had executed a deed conveying his interest in the estate of James J. Maxwell, deceased, the alleged father of Thaddeus J. Maxwell, to his brother, Thomas J. Maxwell, which deed contained a recital, "that, whereas, the said William C. Maxwell is by law entitled to a share of the estate of James J. Maxwell, deceased, as next of kin to said James J. Maxwell, who died without lawful issue," etc., which recital the administrator alleged es-

topped the appellants from claiming that the intestate, Thaddeus J. Maxwell, was the son of James J. Maxwell, or that their father, who was the brother of James J. Maxwell, was the uncle of the intestate, Thaddeus J. Maxwell, or that the appellants were entitled to share as next of kin in the distribution of the estate of Thaddeus J. Maxwell, deceased. The appellants filed a demurrer to the plea of estoppel, and the demurrer was overruled. An appeal was then taken to this Court to settle the principle of law involved, and this Court in affirming the decree of the lower court said: ''The deed was executed by the father of the appellants and under whom they claimed. The petition is based on the fact that the intestate was the son of James J. Maxwell, a brother of appellants' father, who is, therefore, alleged to be the uncle of the intestate. The deed recites a fact wholly inconsistent with this claim, to-wit, that James J. Maxwell 'died without lawful issue.' * * * The rule is well settled, that all parties to a deed are bound by the recitals in it legiti-mately appertaining to the subject matter of it. It applies not only to the parties immediately, but to those claiming under them, to privies in blood, privies in estate, and privies in law. Trevinian v. Lawrence, Salk. 276, 1 Greenl. Ev., par. 23-26. Here the matter recited was a material thing connected with the act done. William C. Maxwell was conveying his alleged interest as next of kin in his brother's estate, who is averred to have died without lawful issue. If that fact were not true, he would not have been entitled as next of kin to his brother's estate, for it would have descended to his lawful issue. The averment, therefore, necessarily precludes the fact, that the intestate was the son or lawful issue of James J. Maxwell, and being an admission of that fact by the ancestor of the appellants, and under whom they claim, they are estopped as privies in blood to deny it.

■■■ A privy in blood is one who derives his title to the property in question by descent. Orthwein v. Thomas, 127 Ill. 554, 21 N. E. 430, 435, 4 L. R. A. 434, 11 Am. St. Rep. 159.

In the case of Nixon's Heirs v. Carco's Heirs, supra, Carco held a parcel of land at the Bay of Biloxi, under an act of Congress of March 3, 1803. His claim to the land was later confirmed to him by an act of Congress of March 3, 1819. On October 7, 1815, Carco sold a part of the land to Bouquie and Martin and executed and delivered to them an instrument of writing evidencing the sale, and Bouquie and Martin went into possession of the land. On December 6, 1937, Nixon acquired a part of the land from Carco's grantees, at a price of $12,000. Carco died in 1921 or 1922. Carco's heirs, although living near the property set up no claim to the property until 1944, when a United States patent was issued to Carco conveying to him the title to the land. Carco's heirs then filed an action in ejectment against Nixon and obtained a judgment. Nixon filed a bill in chancery to quiet his title and to enjoin the execution of the judgment which had been obtained against him in the action of ejectment. Nixon died, and the cause was revived in the names of Nixon's heirs. The vice chancellor dismissed the bill and the complainants appealed. When the case was heard on appeal the decree of the vice chancellor was reversed and a decree entered here perpetually enjoining the execution of the judgment at law. In reversing the decree of the lower court this Court in its opinion held that the instrument of conveyance which Carco signed when he sold the land to Bouquie and Martin was in effect an instrument of bargain and sale, and that Carco's heirs were estopped to set up the subsequently acquired title against the deed of their ancestor.

It is clear that in each of the above mentioned cases the heirs were claiming the property in question by descent and not by purchase; and the court held that they were

estopped from asserting their claims because of their privity in blood and estate with their ancestor.

 We think that Dandy Griffin, Jr., was not estopped by the deed executed by his father in 1929 from setting up the tax title to the 40-acre tract acquired by him from the State ten years later as a defense to the appellants' claims, and that the decree of the lower court should be affirmed.

Affirmed.

*Roberds, P. J.,* and *Lee, Arrington* and *Lotterhos, JJ.,* concur.