Pauline Belva Farrand GRAY and Earsil Basil Farrand, Plaintiffs in Error,

v.

Beula G. STILLMAN, Defendant in Error.

No. 38693.

Supreme Court of Oklahoma.

Sept. 26, 1961.

Edward C. Montgomery, Fairview, Lewis G. Mosburg, Jr., Oklahoma City, for plaintiffs in error.

John B. Doolin, Alva, for defendant in error.

JOHNSON, Justice.

■ This case involves the construction of a warranty deed executed on November 2, 1931, by C. A. Farrand and Jessie V. Farrand conveying 160 acres of land to their son, Corles N. Farrand, and his "blood heirs." The plaintiffs in this case, Pauline Belva Farrand Gray and Earsil Basil Farrand, are the "blood heirs" and the only children of Corles N. Farrand.

In this action to quiet title, plaintiffs contend that the words in the granting clause, together with other language in the deed, show an intention on the part of the grantors to name these plaintiffs as grantees of the fee simple title in remainder, following successive life estates created by the deed in favor of C. A. Farrand, Jessie V. Farrand and Corles N. Farrand.

Defendant, Beula G. Stillman, a daughter of C. A. Farrand and Jessie V. Farrand, contends that the deed in question conveyed a fee simple title to Corles N. Farrand. In deraigning her title, her evidence shows that C. A. Farrand died within a few days after executing the deed; that on December 17, 1931, Corles N. Farrand executed a warranty deed in favor of his mother, Jessie V. Farrand, for a valuable consideration, and that on March 16, 1940, Jessie V. Farrand conveyed the property to defendant. The evidence shows that Jessie V. Farrand died in 1947.

Defendant filed a cross-petition praying the court to quiet the fee simple title in said land in her. The trial court held that the deed in question conveyed a fee simple title in said land to Corles N. Farrand, subject to the successive life estates of C. A. Farrand and Jessie V. Farrand, and quieted the fee simple title thereto in the defendant, from which judgment plaintiffs have appealed.

The decisive question presented is whether the deed from C. A. Farrand and Jessie V. Farrand conveyed a fee simple title to Corles N. Farrand, or only a life estate to Corles N. Farrand with the remainder in fee simple to plaintiffs, following the successive life estates of the grantors.

In order to give proper consideration to the question presented, it is necessary that we quote the deed in full, omitting only the acknowledgments. We have emphasized those typewritten portions of the deed which we believe to be decisive. The deed provides:

"THIS INDENTURE, MADE THIS 2nd DAY OF NOV. A.D., 1931 BETWEEN C. A. Farrand AND JESSIE V. FARRAND, his wife OF Woodward COUNTY, IN THE STATE OF OKLAHOMA, OF THE FIRST PART, AND Corles N. Farrand, a married man OF COUNTY IN THE STATE OF Louisiana, THE SECOND PART:

"WITNESSETH, THAT SAID PARTies OF THE FIRST PART, IN CONSIDERATION OF THE SUM OF One Dollar and Love and Affections DOLLARS, THE RECEIPT OF WHICH IS HEREBY ACKNOWLEDGED DO BY THESE PRESENTS, GRANT, BARGAIN, SELL AND CONVEY UNTO THE SAID PART— OF THE SECOND PART, blood HEIRS AND ASSIGNS ALL THE FOLLOWING DESCRIBED REAL ESTATE SITUATED IN Major County COUNTY AND STATE OF OKLAHOMA, TO-WIT:

"The North half of the southeast fourth (N½ SE¼), and the south half of the southeast fourth (S½ SE¼) of Section 10 Twp. 23, Range 16, consisting of 160 acres more or less.

*"It is the wishes of the parties of the first part that the title of the above described land be kept in the name of Corles N. Farrand during his lifetime and thereafter the title shall be transferred to his blood son Earsil Basil Farrand and to his blood daughter Pauline Belva Farrand-Grey.*

"It is furthermore the wishes of the parties of the first part that C. A. Far-

rand shall have charge of the manag-ing and the leasing for farming, grazing or other purposes, and the collecting of rentals during his lifetime, and thereafter the wishes of the parties of the first part are that Jessie V. Farrand shall have charge of the collection of the rentals, less the taxes in each instance, and the remainder of the rentals are to be used by Jessie V. Farrand as she judiciously sees fit.

"*It is furthermore the wishes of the parties of the first part that this deed be recorded and held in escrow during the lifetime of C. A. Farrand and Jessie V. Farrand, and will then be delivered to Corles N. Farrand or his blood heirs.*

"It is intended that the annual taxes deducted from rentals shall be paid from the rentals.

"TO HAVE AND TO HOLD THE SAME TOGETHER WITH ALL AND SINGULAR THE TENEMENTS, HEREDITAMENTS, AND APPURTENANCES THEREUNTO BELONGING OR IN ANYWISE APPERTAINING FOREVER:

"AND SAID C. A. Farrand and Jessie V. Farrand FOR their HEIRS, SUCCESSORS, EXECUTORS OR ADMINISTRATORS, DO HEREBY COVENANT, PROMISE AND AGREE, TO AND WITH THE SAID PARTies OF THE SECOND PART, THAT AT THE DELIVERY OF THESE PRESENTS have LAWFULLY SEIZED IN their OWN RIGHT OF AN ABSOLUTE AND INDEFEASABLE ESTATE OF INHERITANCE, IN FEE SIMPLE, OF AND IN ALL AND SINGULAR THE ABOVE GRANTED AND DESCRIBED PREMISES, WITH THE APPURTENANCES, THAT THE SAME ARE FREE, CLEAR, DISCHARGED AND UNINCUMBERED OF AND FROM ALL FORMER OR OTHER GRANTS, TITLES, CHARGES, ESTATES, JUDGMENTS, TAXES, ASSESSMENTS AND INCUMBRANCES OF WHAT NATURE OR KIND SOEVER. AND THAT they WILL WARRANT AND DEFEND THE SAME FOREVER UNTO SAID PARTies OF THE SECOND PART, his HEIRS, SUCCESSORS, AND ASSIGNS, AGAINST SAID PARTies OF THE FIRST PART HEIRS, AND ALL AND EVERY PERSON OR PERSONS WHOMSOEVER LAWFULLY CLAIMING OR TO CLAIM SAME.

"IN WITNESS WHEREOF, THE SAID PARTies OF THE FIRST PART HAVE HEREUNTO SET their HANDS THE DAY AND YEAR FIRST ABOVE WRITTEN.
    "C. A. FARRAND
    "JESSIE V. FARRAND."

■ It is well settled in this jurisdiction that a deed should be interpreted and the intention of parties ascertained in the same manner as other written contracts. Rush v. Champlin Refining Co., Okl., 321 P.2d 697; Jennings v. Amerada Petroleum Corporation, 179 Okl. 561, 66 P.2d 1069. But such intention cannot be used as a basis for deducing a conveyance when there is no granting clause creating the estate which was intended.

As was said by the Court of Appeals of Kentucky in the case of Flynn v. Fike, 291 Ky. 316, 164 S.W.2d 470, 473:

"Our court is one of the strongholds of the rule that in the construction of deeds the intention of the parties should be ascertained and given effect, regardless of formalities, but we have never extended that rule to the point of holding that title to realty may be transferred without words of conveyance or language indicating an intention to convey or transfer title."

We are convinced and hold that the words "blood heirs" as used in the above deed are words of limitation and not words of purchase; therefore, no estate of any sort was vested in the plaintiffs in error by reason of their use following the name of the

grantee. We are confirmed in this conclusion by the subsequent actions of the interested parties.

The pertinent facts disclosed by the record are:

1. In the warranty deed from Corles to Jessie, who had been one of his grantors and was advised of the contents of her deed to him, there was no reference to a remainder interest in anyone else.

2. A valuable consideration was paid by Jessie which obviously represented more than the value of a life estate in Corles. If she had been purchasing his life estate, she would have but little more than she already had, for she had an estate for her life.

3. There was a mortgage on this property in the approximate amount of $3,206 which was retired by Jessie and defendant in error, a sum which would probably not have been paid if only a life estate had been purchased.

These and many other instances disclosed by the record reveal that the parties considered that Corles had a fee simple title.

If intention is considered the controlling factor, we think the above amply sustains the judgment of the trial court. But there is an additional consideration herein. The three paragraphs inserted in the deed following the description contained no words of conveyance. They merely expressed a wish as to the future disposition of the property.

In the case of Long v. Holden, 216 Ala. 81, 112 So. 444, 446, 52 A.L.R. 536, the deed in question contained the following insertion after the description and before the habendum:

"* * * It is so understood that at my death this land is to go to my daughter, L. L. Holden."

In commenting on the effect of this the court said:

"* * * By the statute, the duty is imposed upon the courts to liberally construe the words employed in the conveyance as words of transfer, and give them effect and operation according to the intention of the grantor, to be collected from the entire instrument. There must, however, be some words intended as words of conveyance. They cannot be supplied by judicial interpolation."

In the above case reference is made to the case of McGarrigle v. Roman Catholic Orphan Asylum of San Francisco, 145 Cal. 694, 79 P. 447, 1 L.R.A.,N.S., 315, in which case the property was conveyed to McGarrigle expressly "during his lifetime." Following the description of the property was this inserted paragraph:

"It is the purpose of the party of the first part by this deed, that after the death of the said party of the second part, the said described lands shall become and be the property of the Roman Catholic Girls' Orphan Asylum of San Francisco, State of California."

In interpreting this deed, the court said:

"* * * the language of the clause itself is but an expression of the grantor's purpose in the future disposition of the property. It left in her a reversion after the life estate of Thomas McGarrigle, which required some future conveyance, or some testamentary disposition, to effectuate its transfer to the orphan asylum. But not only was there a failure of operative words to convey to the asylum, but no present interest can be said to pass under the language which was employed. It is fundamental that, while possession or enjoyment of an estate may be deferred, a deed, to be operative, must pass a present interest. * * *"

As said by the court in the Long case, supra, there must be words of conveyance to create an estate. They cannot be supplied by judicial interpolation.

While it is a cardinal rule of construction that the intention of the grantor in a deed, gathered from the four corners of the instrument, and surrounding circumstances, must be given effect if possible, such intention cannot be controlling if there is

an absence of a proper granting clause, conveying a present interest and creating the estate intended.

We are of the opinion and hold that the deed in question, as construed by the parties, and by its failure to convey a present interest, vested Corles Farrand with the fee title rather than a life estate.

Judgment affirmed.

BLACKBIRD, V. C. J., and DAVISON, HALLEY and BERRY, JJ., concur.

WILLIAMS, C. J., and WELCH, JACKSON and IRWIN, JJ., dissent.

JACKSON, Justice (dissenting).

It is well settled in this jurisdiction that a deed should be interpreted and the intention of parties ascertained in the same manner as other written contracts. Rush v. Champlin Refining Co., Okl., 321 P.2d 697; Jennings v. Amerada Petroleum Corporation, 179 Okl. 561, 66 P.2d 1069. The intention of the parties controls, and when a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible. The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others. The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense. 15 O.S.1951 § 152 et seq.

Plaintiffs recognize that, generally, such terms as "heirs", "bodily heirs", and "blood heirs" in deeds denote general words of inheritance, not of purchase. They contend, however, that where from the entire context of the deed it appears that said terms are used as descriptio personarum, identifying specific persons in being, they are not words of inheritance, but of purchase, resulting in the vesting of a present interest in such persons under the deed.

In this connection, it is specifically urged that the language immediately following the description of the property "and thereafter the title shall be transferred to his *blood son* Earsil Basil Farrand and to his *blood daughter Pauline Belva Farrand-Gray*," constitutes an identification of those persons, plaintiffs herein, as the "blood heirs" referred to in the granting clause, thus rendering the latter term one of purchase, not of inheritance.

No case has been cited wherein this court has considered the exact question; however, in Dunnett et al. v. First National Bank & Trust Co. of Tulsa, 184 Okl. 82, 85 P.2d 281, we stated that the word "heirs" in a trust agreement creating life estates in certain persons with limitation over to the heirs of the settlor under certain circumstances, should not be construed as a word of purchase unless clearly used with that intent.

In 26 C.J.S. Deeds § 126, page 963, appears the following statement:

"* * * The term 'heirs of the body' may be used as a word of purchase or of limitation, depending on the grantor's intent. The court will look to the entire instrument to determine in what sense the term is used. When used technically, such phrase is one of limitation and indicates all those persons who, on the death of the immediate ancestor, succeed to the estate from generation to generation. Such words are presumed to be used technically, as words of limitation, unless the contrary appears on the face of the instrument; and under this rule a deed to a named grantee and his bodily heirs does not create a life estate in the named grantee with remainder to his children, but it vests the named grantee with a fee simple title.

"Where the grantor used the term 'heirs of the body' as descriptio personarum, as indicating that they and not the ancestor were to be the root of the succession to the property, the term will be construed a term of purchase and not of limitation."

In Thompson on Real Property, Permanent Edition, Section 767, it is stated:

"The term 'heirs of the body' may, however, be used to designate the children of the grantee, and in such case the children will take as purchasers, either in common with the parent, or in remainder after a life estate in the parent, in accordance with the intention of the grantor. When it appears from the context that the words 'heirs' or 'heirs of the body' are intended to have a broader or more popular meaning than is accorded to them in a technical usage, courts will lay hold of any expressions in the instrument indicative of such intention, and will give to the words the meaning which it appears they were intended to convey. Thus, where the phrase 'heirs of the body' and 'children' are used as synonymous, and it is clear that the technical phrase is not used for the purpose of limitation, but as a description of a class of persons, the ascertained intention of the maker of the instrument will prevail, the two phrases will be held to mean the same thing, and the words 'heirs of the body' will be given effect as words of purchase."

In Williams v. McConico, 36 Ala. 22, the deed was to "my said daughter, and the heirs of her body forever," and also contained a recitation that the grantor wished to make permanent support for his daughter "and her children." Held, the term, "heirs of her body" was one of purchase and the children acquired a present interest under the deed, not by inheritance.

In May v. Ritchie, 65 Ala. 602, the grant was in trust "for my said daughter Christiana, and the heirs of her said body." It was further stated in the deed that it was for the support of "her children," and that after the daughter's death the property was to be divided among her children. Held, the word "heirs" was used synonymously with the word "children", and would be construed as a word of purchase, not of inheritance, creating a life estate in the daughter with remainder in her children.

In Ely v. United States Coal & Coke Co., 243 Ky. 725, 49 S.W.2d 1021, 1024, the grant was to Mary Day and "the heirs of her body begotten," and other language in the deed indicated that by such term grantors meant "their grandchildren".

At page 1024 of the opinion in South Western Reporter, the court said:

"A doubtful or strained construction is not necessary to determine the class into which this case falls. When the 'heirs of her body begotten' are referred to as the grandchildren of the grantors, no room is left for doubt or cavil. But in further confirmation of the intent and purpose of the grantors, the deed in caption, granting, and habendum clauses refers to grantees as 'parties of the second part' or 'said second parties.' The grandchildren of grantors begotten of the body of Mary Day could mean none other than her children. There is no escape from the conclusion that this deed conveyed to Mary Day an estate for life with remainder in fee to her children."

Other cases reaching a similar result are Albers v. Donovan, 371 Ill. 458, 21 N.E.2d 563; Turpin v. Jarrett, 226 N.C. 135, 37 S.E.2d 124; Whitson v. Barnett, 237 N.C. 483, 75 S.E.2d 391; Combs v. Combs, 294 Ky. 89, 171 S.W.2d 13; Waite v. Schmidt, 173 Kan. 353, 245 P.2d 975; Seymour v. Bowles, 172 Ill. 521, 50 N.E. 122; Jarvis and Trabue v. Quigley, 10 B. Mon., Ky., 104; Goss v. Eberhart, 29 Ga. 545.

I am persuaded that we should follow what appears to be the general rule that "heirs", "bodily heirs", "blood heirs", and similar expressions in deeds, may be construed as words of inheritance or of purchase, depending upon the intention of the grantor as ascertained from the context of the entire instrument. Said rule is in complete harmony with the well-established rule in this jurisdiction that the cardinal principle in construing deeds is to ascertain the intention of the grantor from the entire context of the deed. 15 O.S.1951 § 152 et seq.

In the instant case, the granting clause conveys to "THE SAID PART—OF THE

SECOND PART, *blood HEIRS AND AS-SIGNS*." Immediately following the description of the property, reference is made to Corles N. Farrand's *blood son Earsil Basil Farrand and to his blood daughter, Pauline Belva Farrand-Grey*."

In the habendum clause, reference is twice made to *parties* of the second part, as in Ely v. United States Coal & Coke Co., supra.

I am convinced that grantors, by reference to Corles N. Farrand's "blood son Earsil Basil Farrand" and "blood daughter Pauline Belva-Farrand-Grey" identified those persons as the "blood heirs" of Corles N. Farrand, as used in the granting clause. It would follow that "blood heirs" was used, not as a term of limitation or inheritance, but as a word of purchase, and that plaintiffs acquired a present interest by the deed. This conclusion is strengthened by the language of the deed providing that after the lifetime of the grantors it "will then be delivered to Corles N. Farrand or his "blood heirs". It appears more likely that grantors intended specific persons in being as recipients of the delivery of the deed, rather than whomever might qualify as "blood heirs" of Corles N. Farrand at some uncertain date in the future.

In defendants' brief it is stated that "plaintiffs in this case are the *blood heirs under the deed above* and the only children of Corles N. Farrand". (Emphasis added.) This is in accordance with my construction that plaintiffs were identified in the deed as the persons intended by the term "blood heirs" in the granting clause.

Having concluded that plaintiffs acquired their interest under the deed, and not by inheritance, the next question presented is whether they took an interest as tenants in common with Corles N. Farrand or a remainder in fee simple following the life estate in Corles N. Farrand.

Under the rule in Wild's case (6 Coke 16b, 77 Reprint 277), a conveyance to a named grantee and his children vests the fee simple title in the named grantee and his then living children as tenants in common, unless it appears from the deed that the grantor intended otherwise. United States v. 654.8 Acres of Land, D.C.Tenn., 102 F.Supp. 937; Hassell v. Sims, 176 Tenn. 318, 141 S.W.2d 472; Cutshaw v. Shelley, 13 Tenn.App. 580; Williams v. McConico, 36 Ala. 22; Goss v. Eberhart, 29 Ga. 545. At page 962 of 26 C.J.S. Deeds § 125, it is said:

"* * *, but a very slight indication of an intention that the children shall not take jointly with the parent will suffice to give the estate to the parent for life, with the remainder to the children."

In Thoma v. Coats, 205 Okl. 688, 240 P.2d 736, we stated that no particular form of words is necessary to create a life estate but such estate may be created when the language of the deed manifests such intent.

In the instant case, the deed provided:

"*It is the wishes* of the parties of the first part that the title of the above described land be kept in the name of Corles N. Farrand during his lifetime and thereafter the title *shall be* transferred to his blood son, Earsil Basil Farrand and to his blood daughter, Pauline Belva Farrand-Grey." (Emphasis added.)

In Case v. Case, 207 Okl. 681, 252 P.2d 432, 433, the granting clause conveyed to party of the second part, her heirs and assigns, reserving a life estate in grantor. Following the reservation, the deed provided, as follows:

"It is intention of this deed that second party hereto shall take this property for her lifetime only and at her death it be divided equally between the heirs of my body."

Held, the deed conveyed to second party only a life estate rather than an estate in fee simple.

In Claridge v. Phelps, 105 Ind.App. 344, 11 N.E.2d 503, where a qualifying clause following the granting clause provided that after death of the grantee the land should pass to her daughter, it was held

clearly intended that grantee took a life estate with remainder to her daughter.

The trial court found in the case now before us that the above-quoted language in the deed was merely "precatory" in nature and thus insufficient to create a life estate. I cannot agree. As heretofore observed, the cardinal principle in construing a deed is to ascertain the *intention* of the grantor. This is the same rule as is applied in the construction of wills. Noble v. Noble, 205 Okl. 91, 235 P.2d 670, 26 A.L.R.2d 1200; 84 O.S.1951 §§ 151, 152.

In McAllister v. Long, 206 Okl. 623, 246 P.2d 352, 353, the will provided in part:

"Second. I give and devise all the rest and residue of my property, real and personal, of every kind and character and wherever located or situated, whether vested or contingent, at the time of my death to my beloved wife, Fannie M. McAllister, to be used by her in any manner that she may deem fit and proper during her lifetime, and at the time of her death, *it is my wish and desire* that said property be divided between my beloved children, that is sons and daughters, as follows, to-wit: * * *" (emphasis added).

At page 353 of the opinion in Pacific Reporter, we said:

"Considering the will as a whole, giving significance to every paragraph and expression thereof, and taking into consideration the circumstances under which it was made, we are convinced that the testator intended 'wish and desire' as used in the second paragraph of said will (above quoted) to mean the same as 'it is my desire and I hereby direct' used in the third paragraph of the will. Had the words 'wish and desire' as used in the will been meaningless, or at least nothing more than a mere whim or hope, the testator would not have directed in the third paragraph thereof that in the event of the contingencies mentioned therein that the interest of any son or daughter who should depart this. life

before the testator '*should pass* and be divided into equal shares among their children.'" (Emphasis added.)

In Appeal of Fox, 99 Pa. 382, it was held that in a will bequeathing certain property to the testator's wife, and declaring that at her death "I wish my estate to go to" certain persons, "wish" should be construed as a mandatory word, and not as a precatory word merely expressing the wish that his wife should give or bequeath the estate to such persons.

In Froage v. Fisher, 165 S.W.2d 358, 291 Ky. 655, it was said that such words as "wish", "desire" and others of kindred significance may be not merely of precatory character but may be mandatory in their dispositive effect where it is evident from the contextual language of the will and the circumstances under which it was written that they are to be so construed with a view to carrying out testatrix' evident intent in using them. To the same effect, Langehennig v. Hohmann, 139 Tex. 452, 163 S.W. 2d 402; In re Hurlbut's Estate, Sur., 64 N.Y.S.2d 575; English v. Ragsdale, 347 Mo. 431, 147 S.W.2d 653.

The trial court construed the language in the instant deed, "*It is furthermore the wishes* of the parties of the first part (that grantors should successively have the use of the land during their respective lifetimes), as creating successive life estates in the grantors."

Applying the rule that where words in one part of a deed are construed according to one meaning, similar words in other parts thereof should ordinarily be given the same construction (26 C.J.S. Deeds § 86, page 830), I am of the opinion that the phrase, "*It is the wishes* of the parties of the first part that the title of the above-described land be kept in the name of Corles N. Farrand during his lifetime and thereafter the title *shall be* transferred to his blood son Earsil Basil Farrand and to his blood daughter, Pauline Belva Farrand-Grey," may not be considered as merely precatory and without effect in ascertaining the intention of grantors as evidenced by the entire instrument.

I believe that by such language the grantors clearly intended to convey a life estate to Corles N. Farrand and the remainder in fee simple to his named children, and that such was the legal effect of the deed.

Considerable testimony was introduced tending to show the construction placed upon the original and subsequent deeds by various *members of the family*. I have carefully examined all of this testimony, however, and find no acts or statements by *plaintiffs* inconsistent with their position in the instant case.

Defendant cites Trumbla et al. v. State ex rel. Commissioners of Land Office, 191 Okl. 119, 126 P.2d 1015, as authority for the rule that the subsequent acts of the parties showing the construction they have put on a deed may properly be considered by the court in construing the deed. In that case, however, the acts considered by the court were those of the parties sought to be bound, which renders that rule inapplicable here.

Assuming that Corles N. Farrand may have acted inconsistently with plaintiffs' position herein, the pertinent question is whether plaintiffs were bound or estopped thereby.

In Cook v. Daniels, Mo., 306 S.W.2d 573, the defendants contended that plaintiffs should be estopped from asserting interests under a deed because they were bound by the warranties in the deed made by their parents to defendants' predecessor in title. At page 576 of the opinion, the court said:

"On the contrary, these facts show there could be no estoppel. The applicable principle is that 'where one is bound by an estoppel his heirs are also bound to the extent that the estoppel was enforceable against the ancestor on the ground that the heir stands in privity with the ancestor'; but 'where the heir claims title to the property by purchase, and not by descent, a warranty will not create an estoppel as against such an heir.' Thompson on

Real Property, Sec. 2526; 31 C.J.S. Estoppel § 53, p. 230; 26A C.J.S. Descent & Distribution § 126, p. 831; 16 Am.Jur. 801, sec. 33; 19 Am.Jur. 812, sec. 155; Oliver v. Piatt, 3 How. 333, 412, 11 L.Ed. 622, 658; McSwain v. Griffin, 218 Miss. 517, 67 So.2d 479. In the Oliver case Justice Story said: 'Another objection taken at the argument is, that Baum's heirs cannot insist upon any title to the property in question because they are bound by the warranty of their ancestor in the conveyance thereof to Oliver. But this objection has no foundation whatsoever in law, whether the warranty be lineal or collateral; for the heirs here do not claim any title to the property by descent, but simply by purchase; and it is only to cases of descent that the doctrine of warranty applies.' "
And:

"We hold this deed was not testamentary and that it was a valid conveyance of a life estate to the grantee with remainder in fee simple to the heirs of her body, reserving a life estate to the grantor. See Mattingly v. Washburn, 355 Mo. 471, 196 S.W.2d 624, 626 and cases cited; Bullock v. Porter, 365 Mo. 572, 284 S.W.2d 598. Therefore, the subsequent deed of plaintiffs' father and mother could convey only their life estates to their grantee, under whom defendants claim; and those life estates so conveyed have terminated."

See also, McMichael v. Craig, 105 Ala. 382, 16 So. 883; Hall v. Condon, 164 Ala. 393, 51 So. 20; Thompson on Real Property, Permanent Edition, Section 748.

Plaintiffs acquired their interest by *purchase*, not by inheritance. Hence, they are not bound or estopped by any acts of their ancestor, Corles N. Farrand.

The evidence that defendant assisted her mother, Jessie V. Farrand, in paying off a mortgage on the land in question (which also covered other land) without any assistance from Corles N. Farrand or the plaintiffs, is not material. As stated in defend-

ant's brief, the sole question is, what interests were created by the original deed upon which both parties base their title?

Defendant's fourth and final proposition is that when the granting clause of a deed is uncertain, the court is justified in using the habendum clause to explain what estate was intended to be conveyed. Conceding the correctness of that rule, in view of the fact that plaintiffs were effectively named in the granting clause and that the habendum clause twice refers to *parties* of the second part, 'said rule does not aid the defendant, but on the contrary, strengthens the position of plaintiffs herein.

For the reasons assigned, I respectfully dissent.

I am authorized to state that WILLIAMS, C. J., and IRWIN, J., concur in the views expressed herein.