Hughes SEEWALD, Francis Hughes Seewald, Leon L. Hoyt, Jr., Joe Wyant, Grace B. Kane, Richard D. Palmer and L. M. Batten, Appellants,

v.

WESTERN GAS INTERSTATE COMPANY and Southern Union Gas Company, a corporation, Appellees.

No. 51958.

Supreme Court of Oklahoma.

Feb. 5, 1980.

---

Larry L. Field, Tryon, Field & Petty, Guymon, for appellants.

James M. Boring, Board & Boring, Guymon, Charles F. Hawkins, Leo J. Hoffman, David N. Kitner, Strasburger & Price, Dallas, Tex., for appellees.

DOOLIN, Justice:

In this action for an accounting, plaintiffs are the owners of overriding royalty interests in gas produced from two wells in Texas County. Defendant, Western Gas Interstate Company (Western), a gas pipeline company, is the owner, operator and producer of the leasehold comprising the production units subject to plaintiffs' interest. Western is a wholly owned subsidiary of defendant Southern Union Gas Company, the only customer served by Western.

Plaintiffs' rights to royalty payments were fixed by an agreement dated January 1, 1953, made with Panoma Corporation, predecessor in interest to defendants. The method and amount of royalty payments are controlled by paragraph 4 of the above agreement. This paragraph provided:

"From and after the effective date hereof PANOMA shall pay to OVERRIDING ROYALTY OWNERS in proportion to their respective ownership an amount per thousand cubic feet of gas produced and marketed from the aforesaid Safranko and Nash Gas Production Units *equal to the price per thousand cubic feet* (after proper adjustment for any different basis of measurement than that hereinabove specified) *established by a valid and lawful order of the Corporation Commission of the State of Oklahoma as the minimum wellhead price at which gas shall be produced* from the Guymon-Hugoton field, less an amount per thousand cubic feet equal to PANOMA'S total expenditures incident to or attributable to the

production of said gas including but not limited to royalties, gross production or other severance taxes, ad valorem taxes, equipment furnished, maintenance, reconditioning of said wells and other operating costs of whatever nature including a reasonable allowance as overhead and accounting expense.

*In the event a minimum price is no longer established for said field by said commission, or some other duly constituted body having jurisdiction, the basis for such payments to OVERRIDING ROYALTY OWNERS shall be the same price received by PANOMA for gas sold in said field, whether at the wellhead as raw gas or as residue gas at the conclusion of gathering less the aforesaid royalty and production expense attributable to said wells and the gas produced therefrom.*

It is the intent hereof that said payments to OVERRIDING ROYALTY OWNERS shall equal the working interest value of the dry gas from the presently producing formations at the wellhead less said operating and production expenses, it being expressly agreed that PANOMA reserves and retains the natural gasoline and other liquefiable hydrocarbons contained in said gas in place as to the aforesaid leaseholds, together with the right at all times and from time to time to extract said constituents from all or any part of such gas as produced . ." (Emphasis supplied).

At the time of the making of this agreement there was in effect an order of the Corporation Commission of the State of Oklahoma, setting the minimum price of gas at the wellhead. Plaintiffs were being paid on this basis per the agreement. However at the time of the execution of the agreement, the Commission order was being challenged. On appeal from a decision of this court upholding the order,[1] the United States Supreme Court reversed in *Natural Gas Pipeline Company of America v. Panoma Corporation, 349 U.S. 44, 75 S.Ct. 576, 99 L.Ed. 866 (1955).* The issue in that case

was whether or not the Oklahoma Corporation Commission has jurisdiction to set minimum wellhead prices when the gas flows in interstate commerce. Based on another decision[2] holding the Federal Power Commission (now Federal Energy Regulatory Commission, hereinafter called FERC) has jurisdiction over the sale of natural gas in interstate commerce by independent producers, the Supreme Court ruled the Corporation Commission did *not* have jurisdiction to issue the order. So effective the date of the *Panoma* decision there was no "valid and lawful order of the Corporation Commission" on which to base overriding royalty payments to plaintiffs as provided in the agreement.

Plaintiffs instigated the present action arguing because no Corporation Commission order existed on which to base royalty payments they should receive the actual working interest value of the gas at the wellhead calculated on the fair market value or the highest sum actually received for the gas by defendants.

Defendants' motion for summary judgment was sustained and judgment entered for defendants. Plaintiffs appeal.

In support of their motion for summary judgment, defendants by affidavit showed the trial court that:

"The gas pipeline system of Western Gas to which the wells on the Kane-Safranko and Kane-Nash gas units have been connected transports gas across the Texas-Oklahoma boundary. Furthermore, the gas produced from the Kane-Safranko and Kane-Nash units themselves is sometimes transported from Oklahoma to Texas, depending on pressure in the pipeline and the needs of the gas distributor and gas users. Accordingly, this transportation and sale of gas by Western Gas for resale through the system has been continuously subject to the jurisdiction of the Federal Power Commission and, since October 1, 1977, its successor, the Federal Energy Regulatory

1. *Natural Gas Pipe Line Co. of America v. Panoma Corporation*, 271 P.2d 354 (Okla.1954).

2. *Phillips Petroleum Co. v. Wisconsin*, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035 (1954).

Commission, under the Natural Gas Act. Moreover, the Federal Power Commission and its successor have exercised such jurisdiction by regulating the rates, service and facilities of Western Gas and its gathering and pipeline system.

When Western Gas acquired the Kane-Safranko and Kane-Nash units on June 1, 1971, the Federal Power Commission had in effect a minimum price of 10.5¢ per mcf for producers of gas produced from the Guymon-Hugoton field of Texas County, Oklahoma. From June 1, 1971 through December 31, 1975, Western Gas paid the plaintiffs their overriding royalty on the basis of the 10.5¢ per mcf minimum price established by the Federal Power Commission. On December 31, 1975, the Federal Power Commission issued Opinion 749 in which it fixed new national rates for sales of gas from wells commenced prior to January 1, 1973. The minimum price established by Opinion 749 for gas produced from the Guymon-Hugoton field, Texas County, Oklahoma (among other areas), is 18¢ per mcf (subject to certain adjustments) commencing January 1, 1976. Since January 1, 1976, Western Gas has paid the plaintiffs their overriding royalty on the basis of the minimum price established by the Federal Power Commission in Opinion 749, which minimum price, after the adjustments provided for in Opinion 749, is 19.258672¢ per mcf."

Plaintiffs did not dispute these facts and raise no fact questions on appeal. Their primary thrust is an attempt to convince us they did not intend the phrase in the agreement basing royalty payments on minimum wellhead price established by Corporation Commission "or some other duly constituted body having jurisdiction" to mean the FERC, but rather a future reorganization of the Oklahoma Corporation.

Unless an agreement is latently ambiguous, its interpretation is a matter of law for the court and parol evidence is not competent to explain it or to vary its terms.[3]

There has not been a minimum price order of the Corporation Commission since the Supreme Court decision in *Natural Gas Pipeline Company of America v. Panoma Corporation, supra.* Under that decision the FERC is the only regulatory body with jurisdiction to set the minimum wellhead price at which gas shall be produced if the gas travels in interstate commerce. Gas produced from the subject units travels across the Texas-Oklahoma boundary. Therefore FERC is a duly constituted body having jurisdiction and has set the minimum wellhead price. Under the clear unambiguous meaning of the 1953 agreement, this price is the basis for computing the amount of the overriding royalty payments. Defendants have been paying royalties to plaintiffs on this basis since they succeeded to the interest of Panoma.

Plaintiffs' arguments the FERC has no jurisdiction to regulate royalties, while a true statement, does not support a different interpretation of the agreement. The agreement does not contemplate either the Corporation Commission or the "other duly constituted body" setting the method or amount of royalty payments. The *agreement* fixes the royalty payments by providing a basis on which they are to be computed.

Trial court's judgment granting summary judgment to defendants is AFFIRMED.

All the Justices concur.

3. *Rush v. Champlin Refining Co.*, 321 P.2d 697 (Okl.1958); *Walker v. Telex*, 583 P.2d 482 (Okl. 1978).